## Case No. 14,692c.

### UNITED STATES v. BURR.[1]

[Coombs' Trial of Aaron Burr, 29.]

Circuit Court, D. Virginia. May 28, 1807.

CRIMES — PRELIMINARY HEARING — AFFIDAVITS — VENUE—AUTHENTICATION.

[1. Where a witness resides at a great distance, and there is no evidence that the materiality of his testimony was known to the prosecutors in time to have directed his attendance, the magistrate will act upon his affidavit.]

[Cited in Re Alexander, Case No. 162.]

[2. An affidavit whose certificate does not state the place where it is taken is not admissible as evidence.]

[3. A certificate stating that a person of the same name with the one who administered the oath is a magistrate, but not stating that the person who administered it is a magistrate, is an insufficient authentication. The court will not presume any fact to sustain it.]

[Cited in Woodworth v. Hall, Case No. 18,-016.]

[At law. On examination of Aaron Burr for commitment for high treason in levying war against the United States.]

[Mr. Hay, Dist. Atty., offered the affidavit of Jacob Dunbaugh, which was] "taken on the fifteenth of April, 1807, before B. Cenas, a justice of the peace," to which was sub-

[1] [For references to the various cases in this series, which, together, embrace a full report of the entire proceedings against Aaron Burr, see footnote to Case No. 14,692a.]

joined a certificate of Governor William C. C. Claiborne, dated "at New Orleans, the sixteenth of April, 1807," stating "that B. Cenas was a justice of the peace for the county of New Orleans." To the reading of this affidavit several objections were taken by the counsel for Colonel Burr, but those most relied on were the following: 1st. That an affidavit could, under no circumstances, be read, unless it were shown, that the witness could not be produced, and that the government had not had sufficient time to procure the attendance of Jacob Dunbaugh. 2dly, That though the governor of New Orleans had certified that B. Cenas was a justice of the peace, yet he had not said, that it was the same B. Cenas before whom that affidavit was taken. 3dly, That B. Cenas had not stated in the caption of his certificate, or elsewhere, that the affidavit was taken "at New Orleans," so as to show that he was acting within his jurisdiction. The argument on these points was continued to the adjournment of the court, who took time to consider the subject till the next day.

Before MARSHALL, Chief Justice, and GRIFFIN, District Judge.

MARSHALL, Chief Justice. On the part of the United States, a paper, purporting to be an affidavit, has been offered in evidence, to the reading which two exceptions are taken: 1st, That an affidavit ought not to be admitted, where the personal attendance of the witness could have been obtained. 2dly, That this paper is not so authenticated as to entitle itself to be considered as an affidavit.

That a magistrate may commit upon affidavits has been decided in the supreme court of the United States, though not without hesitation. The presence of the witness, to be examined by the committing justice, confronted with the accused, is certainly to be desired, and ought to be obtained, unless considerable inconvenience and difficulty exist in procuring his attendance. An ex parte affidavit, shaped, perhaps, by the person pressing the prosecution, will always be viewed with some suspicion, and acted upon with some caution; but the court thought, it would be going too far to reject it altogether. If it was obvious that the attendance of the witness was easily attainable, but that he was intentionally kept out of the way, the question might be otherwise decided. But the particular case before the court does not appear to be of this description. The witness resides at a great distance; and there is no evidence that the materiality of his testimony was known to the prosecutors or to the executive, in time to have directed his attendance. It is true, that general instructions, which would apply to any individual, might have been sent, and the attendance of this, or any other material witness, obtained under those instructions; but it would be requiring too much, to say that the omission to do this ought to exclude

an affidavit. This exception, therefore, will not prevail.

The second is, that the paper is not so authenticated as to be introduced as testimony on a question which concerns the liberty of a citizen. This objection is founded on two omissions in the certificate. The first is, that the place at which the affidavit was taken does not appear. The second, that the certificate of the governor does not state the person who administered the oath to be a magistrate; but goes no further than to say, that a person of that name was a magistrate. That, for aught appearing to the court, this oath may, or may not, in point of fact, have been legally administered, must be conceded. The place, where the oath was administered, not having been stated, it may have been administered where the magistrate had no jurisdiction, and yet the certificate be perfectly true. Of consequence, there is no evidence before the court, that the magistrate had power to administer the oath, and was acting in his judicial capacity.

The effect of testimony may often be doubtful, and courts must exercise their best judgment in the case; but of the verity of the paper there ought never to be a doubt. No paper writing ought to gain admittance into a court of justice as testimony, unless it possesses those solemnities which the law requires. Its authentication must not rest upon probability, but must be as complete as the nature of the case admits of: this is believed to be a clear legal principle. In conformity with it is, as the court conceives, the practice of England and of this country, as is attested by the books of forms; and no case is recollected, in which a contrary principle has been recognized. This principle is, in some degree, illustrated by the doctrine with respect to all courts of limited jurisdiction. Their proceedings are erroneous, if their jurisdiction be not conclusively shown. They derive no validity from the strongest probability that they had jurisdiction in the case: none, certainly, from the presumption, that being a court, an usurpation of jurisdiction will not be presumed. The reasoning applies in full force to the actings of a magistrate, whose jurisdiction is local. Thus, in the case of a warrant, it is expressly declared, that the place where it was made ought to appear. The attempt to remedy this defect, by comparing the date of the certificate given by the magistrate with that given by the governor, cannot succeed. The answer given at bar to this argument is conclusive: the certificate wants those circumstances which would make it testimony; and without them no part of it can be regarded.

The second objection is equally fatal. The governor has certified that a man of the same name with the person who has administered the oath is a magistrate, but not that the person who has administered it is a magistrate. It is too obvious to be controverted that there may be two or more persons of

the same name, and, consequently, to produce that certainty, which the case readily admits of, the certificate of the governor ought to have applied to the individual who administered the oath. The propriety of this certainty and precision in a certificate, which is to authenticate any affidavit to be introduced into a court of justice, is so generally admitted, that I do not recollect a single instance in which the principle has been departed from. It has been said, that it ought to appear that there are two persons of the same name, or the court will not presume such to be the fact. The court presumes nothing. It may or may not be the fact, and the court cannot presume that it is not. The argument proceeds upon the idea that an instrument is to be disproved by him who objects to it, and not that it is to be proved by him who offers it. Nothing can be more repugnant to the established usage of courts. How is it to be proved, that there are two persons of the name of Cenas in the territory of Orleans? If, with a knowledge of several weeks, perhaps months, that this prosecution was to be carried on, the executive ought not to be required to produce this witness, ought the prisoner to be required, with the notice of a few hours, to prove that two persons of the same name reside in New Orleans? It has been repeatedly urged that a difference exists between the strictness of the law which would be applicable to a trial in chief, and that which is applicable to a motion to commit for trial. Of the reality of this distinction, the present controversy affords conclusive proof. At a trial in chief, the accused possesses the valuable privilege of being confronted with his accuser. But there must be some limit to this relaxation, and it appears not to have extended so far as to the admission of a paper not purporting to be an affidavit, and not shown to be one. When it is asked whether every man does not believe that this affidavit was really taken before a magistrate, it is at once answered that this cannot affect the case. Should a man of probity declare a certain fact within his own knowledge, he would be credited by all who knew him; but his declaration could not be received as testimony by the judge who firmly believed him. So a man might be believed to be guilty of a crime, but a jury could not convict him unless the testimony proved him to be guilty of it. This judicial disbelief of a probable circumstance does not establish a wide interval between common law and common sense. It is believed in this respect to show their intimate union. The argument goes to this, that the paper shall be received and acted upon as an affidavit, not because the oath appears to have been administered according to law, but because it is probable that it was so administered. This point seems to have been decided by the constitution. "The right of the people," says that instrument, "to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the places to be searched, and the persons or things to be seized." The cause of seizing is not to be supported by a probable oath, or an oath that was probably taken, but by oath absolutely taken. This oath must be a legal oath; and, if it must be a legal oath, it must legally appear to the court to be so. This provision is not made for a final trial; it is made for the very case now under consideration. In the cool and temperate moments of reflection, undisturbed by that whirlwind of passion with which, in those party conflicts which most generally produce acts or accusations of treason, the human judgment is sometimes overthrown, the people of America have believed the power even of commitment to be capable of too much oppression in its execution to be placed, without restriction, even in the hands of the national legislature. Shall a judge disregard those barriers which the nation has deemed it proper to erect? The interest which the people have in this prosecution has been stated; but it is firmly believed that the best and true interest of the people is to be found in a rigid adherence to those rules which preserve the fairness of criminal prosecutions in every stage, If this was a case to be decided by principle alone, the court would certainly not receive this paper: but if the point is settled by decision, it must be conformed to.

It has been said to be settled in the supreme court of the United States by admitting the affidavit of Wilkinson, to which an exception was taken, because it did not appear that the magistrate had taken the oaths prescribed by law. It is said that as by law he could not act until he had taken the oaths and he was found acting, it must be presumed that this prerequisite was complied with; that is, that his acting as a magistrate under his commission was evidence that he was authorized so to act. It will not be denied that there is much strength in the argument; but the cases do not appear to be precisely parallel. The certificate that he is a magistrate, and that full faith is due to his acts, implies that he has qualified, if his qualification is necessary to his being a complete magistrate, whose acts are entitled to full faith and credit. It is not usual for a particular certificate, that a magistrate has qualified, to accompany his official acts. There is no record of his qualification, and no particular testimonial of it could be obtained. These observations do not apply to the objections which exist. But it is said that the certificate is the same with that in Wilkinson's affidavit. If this objection had been taken and overruled, it would have ended the question; but it was not taken, so far as is now recollected, and does not appear

to have been noticed by the court. It is not recollected by the judge who sat on that occasion to have been noticed. A defect, if it be one, which was not observed, cannot be cured by being passed over in silence. The case in Washington was a civil case, and turned upon the point, that no form of the commission was prescribed, and consequently, that it was not necessary to appear on the face of it that it was directed to magistrates. That it was the duty of the clerk to direct it to magistrates, and he should not be presumed to have neglected his duty in a case in which his performance of it need not appear on the face of the instrument. That the person intending to take this exception ought to have taken it sooner, and not surprise the opposite party when it was too late to correct it. But the great difference is, that the privy examination was a mere ministerial act; the administering an oath is a judicial act. The court is of opinion that the paper purporting to be an affidavit made by Dunbaugh cannot be read because it does not appear to be an oath.