STATE of Wisconsin, Plaintiff-Appellant,

v.

Wilton TYE, Defendant-Respondent.

Supreme Court

*No. 99–3331–CR. Oral argument September 12, 2001.—Decided November 27, 2001.*

2001 WI 124

(Also reported in 636 N.W.2d 473.)

531

For the plaintiff-appellant the cause was argued by *William L. Gansner,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-respondent, there was a brief by *Mark D. Richards* and *Christy M. Hall,* Racine, and oral argument by *Mark D. Richards.*

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE.   This case comes before the court on a certifi-

cation by the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (1999–2000).[1] The State appeals an order of the Circuit Court for Racine County, Emily S. Mueller, Circuit Court Judge, suppressing evidence seized pursuant to a search warrant. We affirm the order.

¶ 2. The circuit court granted the motion of the defendant Wilton Tye to suppress evidence of drugs seized during a search of his residence. The warrant authorizing the search was not supported by a statement under oath or affirmation. The circuit court suppressed the evidence seized, holding that the warrant violated the oath or affirmation requirement explicitly set forth in the Fourth Amendment to the U.S. Constitution and Article I, Section 11 of the Wisconsin Constitution. The Fourth Amendment to the U.S. Constitution provides, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."[2] Article I, Section 11 of the Wisconsin Constitution similarly states, in relevant part, that "no warrant shall issue but upon probable cause, supported by oath or affirmation."[3]

¶ 3. The parties agree, and we hold, that the total absence of any statement under oath to support a search warrant violates the explicit oath or affirmation requirement of both the federal and state constitutions and that the warrant therefore is constitutionally in-

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[2] The Fourth Amendment to the U.S. Constitution is applied to the states through the Fourteenth Amendment to the U.S. Constitution. *Walberg v. Deisler,* 73 Wis. 2d 448, 455, 243 N.W.2d 190 (1976).

[3] Except for the use of the singular "warrant," Article I, Section 11 of the Wisconsin Constitution is identical to the Fourth Amendment.

firm. The question presented is whether evidence seized pursuant to such a search warrant must be suppressed. We conclude that the evidence seized must be suppressed.

I

¶ 4. For the purposes of the motion to suppress, the facts are not in dispute. A 30–year veteran investigator of the city of Racine police department drafted an affidavit in support of a search warrant for a residence occupied by the defendant. The investigator presented the affidavit to an assistant district attorney for review and approval, and she approved the affidavit.

¶ 5. The investigator then presented the affidavit to Racine County Circuit Court Judge Dennis Flynn on June 28, 1999. The investigator failed, however, to sign and swear to the truth of the affidavit written in support of the search warrant and failed to give sworn testimony attesting to the accuracy of the statements in the affidavit. The circuit court issued the warrant. Neither the assistant district attorney who initially reviewed the affidavit nor the circuit court judge who issued the warrant nor the investigator detected that the investigator failed to make the allegations contained in the affidavit under oath. The warrant states that attached thereto is the "sworn affidavit which is incorporated by reference." The warrant was facially defective because no *sworn* affidavit was attached.

¶ 6. After the warrant was issued on June 28, 1999, the investigator copied the face of the search warrant, placed the original search warrant and attached affidavit in a file and did not review these documents again until July 1, 1999, after the search warrant had been executed and he was preparing the

return on the search warrant. Heroin and other evidence were seized during the search, indicating that the residence was being used for heroin sales.

¶ 7. On July 1, 1999, upon returning from executing the search warrant, the investigator realized that the affidavit supporting the warrant had not been given under oath. The investigator notified the district attorney's office and prepared a second affidavit describing the search warrant application process, his failure to sign and swear to the initial affidavit, and his discovery of these facts after he executed the search warrant. The second affidavit also stated that the contents of the initial affidavit were true. The investigator then swore to the truth of the statements contained in the second affidavit. The circuit court concluded, and the parties stipulated, that the allegations in the affidavit, if true, provided probable cause for issuance of the search warrant.

## II

¶ 8. To frame our discussion, we begin by examining the historical antecedents of the oath requirement of both the federal and state constitutions. The oath or affirmation requirement relating to search warrants first appeared, albeit briefly, in England. In 1662, Parliament authorized the issuance of general warrants, known as Writs of Assistance, for collecting taxes and enforcing customs laws.[4] The 1662 English law required officials seeking search warrants to swear an oath as a means of controlling the unfettered discre-

---

[4] Nelson B. Lasson, *The History and Development of the Fourth Amendment to the United States Constitution* 28 (1937).

tion of the searcher.[5] In 1664, Parliament deleted the oath requirement,[6] and in 1696 an act of William III officially applied the Writs of Assistance without the explicit oath requirement to the American colonies.[7] Thereafter, the writs were used in the American colonies to search wherever government officials chose with nearly absolute and unlimited discretion. This power continued in the colonies well into the eighteenth century.

¶ 9.   The colonists viewed the Writs of Assistance as fundamental violations of their basic right to be undisturbed in their person and property. The "[p]erceived abuses . . . were among the most deeply felt grievances held by the colonists against British government."[8] Following independence, each of the state constitutions guaranteed individuals the right to be free from unreasonable searches and seizures. In 1776, the Pennsylvania Constitution made an oath or affirmation essential to the validity of a warrant. The Pennsylvania provision was the basis for the Fourth Amendment to the U.S. Constitution, which included the oath or affirmation language. The states ratified the Fourth Amendment in 1791 as part of the Bill of Rights.

¶ 10.   In 1839, three years after the Organic Act of 1836 created the Territory of Wisconsin, the territorial legislature enacted Act 44, which required an oath in an

---

[5] William W. Greenhalgh & Mark J. Yost, *In Defense of the "Per Se" Rule: Justice Stewart's Struggle to Preserve the Fourth Amendment Warrant Clause,* 31 Am. Crim. L. Rev. 1013, 1024 (1994).

[6] *Id.* at 1098 n.45.

[7] Nelson B. Lasson, *The History and Development of the Fourth Amendment to the United States Constitution* 53 (1937).

[8] 4 Sanford H. Kadish, *Encyclopedia of Crime and Justice* 1416 (1983).

application for a search warrant.[9] When Wisconsin became a state in 1848, the declaration of rights in the Wisconsin Constitution, Article I, Section 11, required an oath or affirmation to support the issuance of a search warrant. This constitutional provision has never been amended and remains part of the Wisconsin Constitution.

¶ 11. The Wisconsin state constitutional oath provision has been reinforced by legislation. The 1848 Wisconsin legislature reiterated the need for an oath in an application for certain search warrants.[10] The text of this statutory provision has been revised numerous times, eventually permitting telephonic search warrant applications.[11] Nonetheless, the oath requirement has remained throughout.[12] Most state constitutions presently include an oath or affirmation requirement for a search warrant.[13]

---

[9] Section 2, ch. 44, Statutes of the Territory of Wisconsin 1839.

[10] Wis. Stat. § 2, ch. 142 (1849): "Any such magistrate when satisfied that there is reasonable cause, may also, upon like complaint made on oath, issue search warrants . . . ."

[11] Wis. Stat. § 363.02 (1949) (search warrant issues upon "a sworn complaint or affidavit, or of oral testimony recorded by a phonographic reporter"); Wis. Stat. § 968.12(3)(a) (1983–84) (allows a judge to "issue a warrant based upon sworn oral testimony communicated by telephone, radio, or other means of electronic communication.").

[12] Under current law, a search warrant may be based either "upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter" under Wis. Stat. § 968.12(2), or "upon sworn oral testimony communicated to the judge by telephone, radio or other means of electronic communication" under Wis. Stat. § 968.12(3)(a).

[13] *See* Westlaw search: PR(constitution) & oath /25 affirmation /99 warrant!

¶ 12.   This cursory review of the oath or affirmation requirement demonstrates the critical importance that the drafters of the federal and state constitutions have placed on the oath to support a search warrant.

¶ 13.   This court has long recognized an oath or affirmation as an essential prerequisite to obtaining a valid search warrant under the state constitution. As early as 1924, this court held in *State v. Baltes,* 183 Wis. 545, 198 N.W. 282 (1924), that when no sworn testimony exists to support a search warrant, then the warrant is void. In *Baltes,* the magistrate did not administer an oath to any of the individuals providing information for the issuance of the search warrant. The *Baltes* court stated that "the magistrate should examine under oath the applicant for the search warrant and his witnesses . . . at least so much thereof as he relied upon in issuing the warrant . . . ."[14] The *Baltes* court also unequivocally stated that the "essential prerequisite to the issuance of a valid search warrant is the taking of sworn testimony from the applicant and witnesses, if any . . . ."[15] The information provided to support the issuance of a warrant "must be sworn to."[16] The *Baltes* court then suppressed the evidence because no sworn testimony existed to support the warrant.[17] This court has repeatedly cited *Baltes* for the proposition that a valid search warrant requires an oath or affirmation.[18]

---

[14] *State v. Baltes,* 183 Wis. 545, 552, 198 N.W. 282 (1924).

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *See, e.g., Walberg v. State,* 73 Wis. 2d 448, 455, 243 N.W.2d 190 (1976) (citing *Pflanz*); *State ex rel. Pflanz v. County Court,* 36 Wis. 2d 550, 561, 153 N.W.2d 559 (1967); *Kraus v. State,* 226 Wis. 383, 385, 276 N.W. 303 (1937); *Glodowski v. State,* 196 Wis.

■

¶ 14. Cognizant of the significance of the constitutional requirement of an oath or affirmation, the State acknowledges, and we agree with the State, that the "failure to swear to the information upon which a warrant is obtained cannot be dismissed as a mere failure to comply with a technicality."[19] As the circuit court wisely stated, the oath or affirmation requirement "is so basic to the Fourth Amendment that the Court simply can't look at it as a technical irregularity not affecting the substantial rights of the defendant."

¶ 15. However, the State makes four arguments to support its position that the seized evidence should not be suppressed:[20] First, it relies on Wis. Stat. § 968.22, which provides that no evidence shall be suppressed for a technical irregularity in the warrant if that irregularity does not affect the substantial rights of the defendant. Second, the State argues that the second sworn affidavit remedies the defect of the initial unsworn affidavit. Third, the State relies on *State v. Nicholson*, 174 Wis. 2d 542, 497 N.W.2d 791 (Ct. App. 1993), to argue that an error in a warrant does not require suppression of seized evidence. Fourth, the State requests the court to allow the admission of the

265, 268, 220 N.W. 227 (1928); *Bergeman v. State,* 189 Wis. 615, 617, 208 N.W. 470 (1926); *Hansen v. State,* 188 Wis. 266, 268, 205 N.W. 813 (1925); *State v. Blumenstein,* 186 Wis. 428, 430, 202 N.W. 684 (1925).

[19] State's Brief at 17.

[20] The four arguments relate to the application of the statutory and constitutional provisions to undisputed facts. These four arguments present issues of law that this court determines independently of the circuit court, but benefiting from its analysis.

seized evidence under a good-faith exception to the exclusionary rule. We examine each of these four arguments in turn.

¶ 16. First, the State relies on Wis. Stat. § 968.22 to save the seized evidence from suppression. Section 968.22 provides that "[n]o evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant."

¶ 17. The State concedes that the constitutional requirement of an oath or affirmation is not a technicality. The State nevertheless, and perhaps in a somewhat contradictory fashion, argues that the absence of a sworn statement to support the search warrant in this case is a technical irregularity not affecting the substantial rights of the defendant and that the seizure of evidence under this warrant is admissible under Wis. Stat. § 968.22.

¶ 18. The essence of the State's position is that the failure to support an application for a search warrant by any sworn information whatsoever is "a matter of form, not substance."[21] The State summarizes its position by stating that "while the oath is not a mere technicality, it is a matter of formality."[22]

¶ 19. We disagree with the State. An oath is a matter of substance, not form, and it is an essential component of the Fourth Amendment and legal proceedings. The purpose of an oath or affirmation is to impress upon the swearing individual an appropriate

---

[21] State's Brief at 15.

[22] *Id.* at 16.

sense of obligation to tell the truth.[23] An oath or affirmation to support a search warrant reminds both the investigator seeking the search warrant and the magistrate issuing it of the importance and solemnity of the process involved.[24] An oath or affirmation protects the target of the search from impermissible state action by creating liability for perjury[25] or false swearing[26] for those who abuse the warrant process by giving false or fraudulent information. An oath preserves the integrity of the search warrant process and thus protects the constitutionally guaranteed fundamental right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

¶ 20. The State's second argument is that the investigator's sworn statement, made after the warrant was issued and executed, remedies the absence of a sworn statement before the issuance of the search warrant.

¶ 21. We are not persuaded that the two affidavits are interchangeable as suggested by the State. Curing

[23] *Kellner v. Christian*, 197 Wis. 2d 183, 192, 539 N.W.2d 685 (1995).

[24] Lynn B. Oberlander, *A First Amendment Right of Access to Affidavits in Support of Search Warrants*, 90 Colum. L. Rev. 2216, 2240–42 (1990); Michael W. McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv. L. Rev. 1409, 1467 (1990); William W. Greenhalgh and Mark J. Yost, *In Defense of the "Per Se" Rule: Justice Stewart's Struggle to Preserve the Fourth Amendment's Warrant Clause*, 31 Am. Crim. L. Rev. 1013, 1024 (1994); Michael Stokes Paulsen, *Dirty Harry and the Real Constitution*, 64 U. Chi. L. Rev. 1457, 1491 n.57 (1997).

[25] Wis. Stat. § 946.31.

[26] Wis. Stat. § 946.32.

the absence of an oath or affirmation before a circuit court issues a warrant by permitting the swearing of an oath or affirmation after the warrant was executed eviscerates the oath or affirmation requirement. An after-the-fact oath or affirmation disregards the historical importance of the oath or affirmation as the basis upon which a neutral magistrate issues a warrant. The State acknowledges that its research has revealed no case law in Wisconsin or elsewhere "supporting the proposition that failure to have a warrant investigator swear to a search warrant application before approval and issuance of a warrant can be cured by the investigator's swearing to the affidavit after issuance of the warrant."[27] We will not create such a remedy for the total absence of an oath or affirmation required by the federal and state constitutions.

¶ 22.   Third, the State relies on *Nicholson,* 174 Wis. 2d 542, to support its claim that an unintended mistake in a search warrant does not vitiate the warrant and is not cause to suppress the evidence seized pursuant to the warrant. In *Nicholson,* the affidavit and the search warrant correctly described in detail the premises to be searched, but gave the wrong street address. The correct address was 1510 State Street, while the address in the warrant was 1512 State Street. The officers searched the correct premises on the basis of the detailed description in the warrant.

¶ 23.   The information before the judge in *Nicholson* was sworn to and the search warrant met the requirement of the federal and state constitutions that the warrant "particularly" describe the place to be

---

[27] State's Brief at 14–15.

searched.[28] So in *Nicholson,* the warrant was valid when issued. Only while executing the warrant did the police officers learn that the warrant recited the wrong address. The officers continued the search because they were on the premises correctly described in the warrant except for the street number. The mistake in *Nicholson* could easily be characterized as a technical irregularity not affecting the substantial rights of the defendant. But in the present case, the error was a wholesale failure in the constitutionally required process of obtaining a search warrant. In the present case the warrant was invalid when issued. Consequently, *Nicholson* is inapplicable.

¶ 24.   Fourth and finally, the State asks this court to allow admission of the seized evidence under a good-faith exception to the exclusionary rule.[29] This court adopted a version of the good-faith exception to the exclusionary rule in *State v. Eason,* 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625. However, we do not extend the good-faith exception to a warrant issued on the basis of a statement that totally lacks an oath or affirmation, as in the present case. The exclusionary rule applies when no oath or affirmation supports a

---

[28] U.S. Const. amend. IV; Wis. Const. art. I, § 2.

[29] We do not adopt the rule set forth in *United States v. Richardson,* 943 F.2d 547 (5th Cir. 1991), as the State urges. In *Richardson,* a law enforcement officer was not placed under oath when applying for a search warrant. The *Richardson* court held that the warrant was constitutionally infirm but fell within a good-faith exception because the error was inadvertent and not dishonest or reckless. *See also United States v. Moore,* 968 F.2d 216 (2d Cir. 1992) (lack of oath or affirmation did not destroy warrant's facial validity because the absence of an oath was an oversight).

search warrant; "it is plainly evident that a magistrate or judge had no business issuing a warrant."[30]

¶ 25. For the reasons set forth, we affirm the order of the circuit court granting the defendant's motion to suppress the evidence.

*By the Court.*—The order of the circuit court is affirmed.

¶ 26. N. PATRICK CROOKS, J. (*concurring*). I agree with the majority opinion that the search warrant, absent the oath requirement, violates both the federal and state constitutions. I write separately only to explain further why the good faith exception to the exclusionary rule does not apply.

¶ 27. As the majority opinion recognizes, we adopted the good faith exception to the exclusionary rule in *State v. Eason,* 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625. Majority op. at ¶ 24. After an extensive review of *United States v. Leon,* 468 U.S. 897 (1984), and the development of the good faith exception to the exclusionary rule in this court, we held that suppression was not necessary when police officers reasonably relied upon a warrant issued by an independent magistrate, even though the "no-knock" portion of the warrant was constitutionally infirm. *Eason,* 2001 WI 98, ¶ 73. In adopting the good faith exception, we also recognized, however, that the good faith exception has parameters[1]. *Id.* at ¶¶ 36, 64, 66. In *Leon,* the United States Supreme Court set out four circumstances where

---

[30] *Illinois v. Gates,* 462 U.S. 213, 264 (1983) (White, J., concurring in judgment). *See Massachusetts v. Sheppard,* 468 U.S. 981, 991 n.7 (1984) (quoting Justice White that there are circumstances when "it is plainly evident that a magistrate or judge had no business issuing a warrant.").

[1] Based on the Wisconsin Constitution,

even though an officer has obtained a warrant and abided by its terms, exclusion may be appropriate. 468 U.S. at 923; *see also Eason,* 2001 WI 98, ¶ 36. The good faith exception does not apply: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *Leon,* 468 U.S. at 923; *see also Eason,* ¶ 36.

¶ 28. The facts of this case fall squarely within the fourth exception to the good faith exception. A warrant that totally lacks an oath or affirmation is so facially deficient that reliance upon the warrant is unreasonable. An officer, who obtains or executes a search warrant unsupported by an oath or affirmation, cannot reasonably rely on that warrant. Accordingly, the good faith exception does not apply and exclusion is appropriate.[2]

---

we require that in order for the good faith exception to apply, the State must show that the process used attended to obtaining the search warrant include a significant investigation and a review by a police officer trained in, or very knowledgeable of, the legal vagaries of probable cause and reasonable suspicion, or a knowledgeable government attorney.

*State v. Eason,* 2001 WI 98, ¶ 63, 245 Wis. 2d 206, 610 N.W.2d 208. Accordingly, in Wisconsin, the good faith exception must be applied within the parameters of *United States v. Leon,* 468 U.S. 897 (1984), as well as the additional parameters we adopted in *State v. Eason,* 2001 WI App 98, ¶ 63, 245 Wis. 2d 206, 610 N.W.2d 208.

[2] I agree with the majority's decision not to apply the good faith exception used in *United States v. Richardson,* 943 F.2d 547 (5th Cir. 1991) or *United States v. Moore,* 968 F.2d 216 (2d

¶ 29. Furthermore, although not dispositive in finding reliance on the warrant unreasonable, it cannot be overlooked that here, the same officer obtained and executed the warrant. In examining whether there was objectively reasonable reliance, "we look to the conduct of all the officers associated with the warrant." *Eason*, 2001 WI 98, ¶ 66 n.33. Here, only one officer was involved. The fact that the officer who failed to sign and swear to the truth of the affidavit is the same officer who executed the facially invalid warrant simply adds to the unreasonableness of the reliance.

¶ 30. Although I agree with the majority that the search warrant in this case is constitutionally infirm, I would not summarily dismiss the State's argument under the good faith exception. This case presents an opportunity to clarify further the good faith exception in Wisconsin, by explaining the circumstances under which an officer may obtain and execute a warrant according to its terms, but exclusion remains appropriate because the warrant was facially deficient, making the officer's reliance on the warrant unreasonable.

¶ 31. For the foregoing reasons, I respectfully concur.

---

Cir. 1992). Both cases are distinguishable because it was the magistrate's inadvertent failure to place the law enforcement officer under oath, or require an oath, that caused the warrants in those cases to be constitutionally infirm. *See Richardson,* 943 F.2d at 550–551; *Moore,* 968 F.2d at 223. Furthermore, the officer in *Moore* signed the search warrant application whereas the officer in this case failed to sign and swear to the truth of the affidavit. *See Moore,* 968 F.2d at 220.

¶ 32. I am authorized to state that Justice WILLIAM A. BABLITCH and Justice JON P. WILCOX join this opinion.