866 So.2d 944 (2004)
STATE of Louisiana
v.
Philip GUIDRY & Kaycee Sterling.
No. 03-K-625.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 2004.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Jackie Maloney, Assistant District Attorneys, 24th Judicial District Court, Gretna, LA, for Relator.
George P. Vedros, and Marquite D.M. Naquin, Indigent Defender Board, Gretna, LA, for Respondent.
*945 Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
THOMAS F. DALEY, Judge.
PROCEDURAL HISTORY
This Writ Application is before the Court following a remand from the Louisiana Supreme Court.[1] The case on remand concerns whether or not suppression of evidence is appropriate for searches conducted pursuant to a facsimile-issued search warrant when the procedural requirements of LSA-C.Cr.P. art. 162.1(d) are not met.
Following the trial court's granting of a Motion to Suppress the State filed a Writ Application with this Court from a ruling granting Philip Guidry's and Kaycee J. Sterling's, defendants/respondents, oral Motion to Suppress Evidence seized as a result of a search warrant issued by facsimile transmission. Defendants asserted these defects:
1. The judge failed to certify on the facsimile the date and time of the administration of the oath; and
2. The judge did not administer the oath to the applicant.
The trial court found the warrant violated mandatory requirements of LSA-C.Cr.P. art. 162.1 and suppressed the evidence. This Court originally denied the State's Writ Application (Writ 03-K-625, La. 5th Cir. May 30, 2003) holding that, "the trial court correctly granted the defendants Motion to Suppress because the procedure used to obtain the search warrant failed to comply with the provisions of the LSA-C.Cr.P. art. 162.1."
The Louisiana Supreme Court remanded the matter to this Court for written treatment and reconsideration in light of United States v. Leon, which generally recognized a "good faith" exception to precluding suppression.[2] The Supreme Court also cited federal cases that interpret comparable Fed.R.Crim.P. rule 41.
SUPPRESSION HEARING
On September 14, 2002, Sergeant Jason Renton submitted a search warrant application by facsimile to the issuing judge. That day he obtained a signed search warrant from the judge for the specifically requested address of 736 MacArthur Drive in Harvey.[3] The sergeant and other officers executed the search warrant at 2:40 p.m. the same day.[4]
Sergeant Renton testified that his verbal telephone communication with the judge was limited. Initially, he advised the judge: "I have a search and seizure warrant that I'd like for you to read and approve." He then asked, "what would you like for me to do?"[5] The search warrant application was then faxed to the judge. Sergeant Renton had no further verbal communication with the judge. The officer did, however, identify himself by name as an officer in the narcotics division. The judge did not ask him any questions before Sergeant Renton faxed the documents.[6]
Copies of the application and search warrant were introduced.[7] These are dated by facsimile notation on September 14, *946 2002 with varying times.[8] Sergeant Renton did not make a notation of the time he furnished the documents, and the judge did not note the time that he signed the warrant before transmitting it.
The sergeant did not recall whether he signed the application when he sent it to the judge.[9] He probably did so, however, he does not always sign the application.[10] He might have signed it the following Monday when he met the judge, presented him with the results of the search, and obtained the judge's original signature.[11]
The search warrant exhibits[12] indicate that the judge signed the warrant, acknowledging that he had probable cause for issuing a search warrant for the described address, as requested in the application. The warrant authorized the search and seizure of specifically designated items associated with distribution and manufacturing of illegal drugs. The return on the search warrant, which lists the seized items, is dated the same date as the warrant's issuance.
The original warrant application and affidavit contain the affiant's signature and the judge's signature.
The warrant affidavit recites that in August 2001, Sergeant Renton met with a confidential source regarding an ongoing narcotics investigation. The informant told the officer he knew Philip Guidry, who resided at 1737 Robin Street in Marrero. Philip Guidry told the informant that he (Guidry), who used methamphetamine, would be rich because he was one ingredient (red phosphorus) away from manufacturing the drug.
The informant related that Merlin Despaux, a mutual friend, returned from California to reside with Philip Guidry. Merlin Despaux was convicted in California for manufacturing this drug. The informant described Philip Guidry's vehicles, which included motorcycles. He also related that Philip Guidry used "Casey" (Guidry's girlfriend), to distribute drugs. He said that "Casey" resided at 736 MacArthur Drive in Harvey. According to the informant, "Casey" worked at a bar, which officers later learned was a "biker bar."
Beginning in August 2002, Sergeant Renton and Agent Boylan conducted numerous surveillances of Philip Guidry's residence. They never saw any vehicles there. On September 9, 2002, Sergeant Renton conducted a surveillance on Robin Street and saw a truck with a license number registered to Stephanie and Spencer Lester at 1713 Robin Street in Marrero. The agents saw no unusual activity.
On September 13, 2002, Sergeant Renton conducted a surveillance of Philip Guidry's residence located at 1737 Robin Street in Marrero. Sergeant Renton saw an additional vehicle in the driveway that was registered to Stephanie and Spencer Lester of 1713 Robin Street in Marrero. Sergeant Renton ended the surveillance. While he returned to the narcotics office, Lieutenant Timothy Miller received an anonymous telephone complaint. The citizen stated that neighbors in the area of the 700 block of MacArthur Drive complained of a strong ammonia smell coming from the residence at 736 MacArthur Drive in Harvey. The citizen advised that Philip Guidry and Merlin Despaux lived there.
*947 Sergeant Renton stated that based on his laboratory training, the smell of ammonia is associated with the type of ammonia that can be used in place of red phosphorus. This type has a distinctive smell and is extremely dangerous.
Sergeant Renton conducted a criminal history check of Merlin Despaux and learned he had a criminal history in California from 1997 through 1998 relative to manufacturing and possession of a controlled dangerous substance. In 1997, he was convicted of manufacturing a controlled dangerous substance. A criminal history check of Philip Guidry revealed that he was on probation for possession of controlled dangerous substances.
Based on Sergeant Renton's 11-1/2 years of service in the narcotics division, he believed it was in the community's best interest to grant a search warrant because all of the chemicals used in the manufacture of methamphetamine are highly toxic and the least disruption in the manufacturing process could result in an explosion.
On September 14, 2002, Sergeant Renton observed the targeted residence and saw Philip Guidry's pickup truck in the driveway and a truck registered to Merlin Despaux.
At the hearing, Sergeant Renton testified that he is certified in the area of volatile labs and knows how quickly these labs can explode.[13] He seized items that are consistent with distribution of illegal drugs.[14]
He also testified that he did not corroborate the ammonia complaint and he did not detect the odor.[15] The citizen reported the smell on September 13th around 11:00 p.m. Officers responded, but the wind was blowing and there was no way to detect the ammonia smell. Sergeant Renton personally spoke to the neighbor and he entered this person's backyard.[16] Sergeant Renton began preparing the warrant around 9:00 a.m. the following day. Meanwhile, officers conducted a surveillance. The sergeant did not want to enter the house while people were cooking the drug because of its explosive potential. He waited for someone to leave. Merlin Despaux left at 1:25 p.m.[17]
The trial judge did not err in finding the warrant was defective since Article 162.1's requirements[18] were not met. Sergeant Renton was uncertain whether he signed the application before submitting it by facsimile. In addition, the warrant here did not meet the requirement of the judge's certifying on the facsimile transmission the date and time of the administration of the oath. According to Sergeant Renton, the trial judge did not administer an oath. Both the United States and Louisiana Constitutions provide that no warrant shall be issued unless based on probable cause, supported by oath or affirmation.[19]
ANALYSIS
We now consider whether the defect in the warrant necessitates the granting of the Motion to Suppress. This court, in Hogan,[20] explained that Leon created an *948 exception to the exclusion of evidence where an officer relies in good faith on a magistrate's probable cause determination and the technical sufficiency of the warrant.[21] The reasoning is that exclusion is designed as a deterrent to "bad faith" police searches[22] and not clerical errors by the criminal magistrate. Hogan further explained that Leon enumerated four instances in which suppression remains appropriate: (1) where the magistrate or judge was misled by information the affiant knew was false or would have known was false except for a reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his detached and neutral judicial role; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient, i.e., fails to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.[23] An officer's reliance on the issuing magistrate's probable cause determination and on the technical sufficiency of the warrant must be objectively reasonable.[24]
Considering the four Leon situations where suppression is appropriate, and in light of the presentation at the suppression hearing, it is noted that these situations are not present.
First, there is no indication that the issuing judge was misled by information Sergeant Renton knew was false or would have known was false except for a reckless disregard for the truth. Second, there is no indication that the issuing judge wholly abandoned his detached and neutral judicial role. Third, the warrant is not so facially deficient that the executing officers could not reasonably presume it to be valid.
Sergeant Renton testified he could not recall whether he signed the application/affidavit at the time of issuance. However, the executing officers reasonably presumed the warrant to be valid given the fact that the judge signed the warrant acknowledging that Sergeant Renton presented an affidavit to him and that he was satisfied that probable cause existed. The warrant refers to the same designated property that is listed in the application/affidavit. It describes in detail the evidence to be seized. Compare, State v. Bagent,[25] where the First Circuit concluded that Leon did not bar suppression where the search warrant did not contain the address of the residence to be searched, the name of any owner or resident, or a list of items to be seized. The court reasoned that an officer could not in good faith rely on a blank search warrant. This is not the case here.
Additionally, we find that the warrant was not based on a search warrant application that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. This was not a "bare bones" application giving only the officer's suspicions of criminal activity.[26]
*949 The officers who executed the warrant could reasonably have believed the application set forth a sufficient nexus between the MacArthur residence and the hoped-for evidence of drug manufacturing, based on the following facts. The application does not consist only of conclusory inferential hearsay from a confidential tipster. Although surveillance showed no sign of illegal narcotics activity, the application recites that the police independently corroborated much of the informant's information. The officers had a reasonable basis to believe, based on the following, that there was probable cause that contraband or drug-manufacturing paraphernalia was at the MacArthur residence: (1) a readily identifiable neighbor reported an ammonia smell the day before the warrant was issued; (2) Merlin Despaux was recently convicted of drug manufacturing; (3) surveillance indicated that Merlin Despaux and Philip Guidry were associated with the MacArthur residence; (4) the confidential informant recently told police that Philip Guidry and Merlin Despaux were currently manufacturing and selling drugs; and (5) Sergeant Renton, who was specially trained in laboratories, recited that ammonia was used in drug manufacturing.
The warrant application does not appear so deficient that by authorizing the search the issuing judge failed to act in a neutral and detached manner and that by executing it the officers acted under circumstances in which they could not have reasonably believed the warrant was valid.
Furthermore, consideration of the federal cases cited by the Supreme Court also indicates that the deficiencies do not require suppression. In United States v. Richardson,[27] the government appealed the district court's granting the defendant's Motion to Suppress. It argued Leon's "good faith" exception applied. The district court found that the warrant was defective because the magistrate failed to administer a proper oath or affirmation. The Federal Fifth Circuit reversed.[28] The federal court found the trial judge correctly concluded that the warrant was constitutionally infirm because it failed to meet the Fourth Amendment's oath or affirmation requirement.[29] Next, the court noted that the district court properly considered that the finding did not end the inquiry since Leon's "good faith" exception should be considered. The appeals court, however, disagreed with the trial judge's finding that Leon did not apply.[30]
In that case, the unsigned affidavit was read over the telephone.[31] The court concluded that when the failure to formally administer the oath or affirmation was inadvertent, and there was no showing of dishonesty or recklessness on the part of the applicant, suppression would not serve a deterrent purpose. It found that magistrates were bound accidentally to fail to administer the oath on "rare occasion[s]," and warrant applicants were unlikely to attempt to circumvent the oath or affirmation requirement because they "will expect to be sworn when preparing their warrant applications" and could not "realistically hope to escape the oath or affirmation requirement."[32]
*950 In the present case, Sergeant Renton testified that he asked the issuing judge for instructions and when he met with the judge the following Monday, he knew he signed the affidavit then. Thus, the deficiencies were inadvertent since the officer expected to be sworn when he prepared the application. There was no indication that he was dishonest or reckless in preparing it.
In United States v. Rome,[33] the Federal 10th Circuit considered the following factors significant: some evidence of exigent circumstances; probable cause was demonstrated; no showing the search prejudiced the defendants; no showing the search would have been less abrasive had the article's provisions been followed; and no evidence of intentional or deliberate disregard for the rule.
Applying Rome to the present case requires a determination of whether probable cause was demonstrated. As previously mentioned, this was not a "bare bones" affidavit. Like Rome, there is a showing of exigent circumstances due to the explosive nature of ammonia. Furthermore, the defendants here failed to show prejudice, evidence of intentional or deliberate disregard, or that the search would have been less abrasive if Article 162.1's provisions had been followed.
Based on the above cited jurisprudence, we find that the trial court erred in granting the Motion to Dismiss. We vacate the granting of the Motion to Suppress and remand the matter to the trial court for further proceedings.
VACATED AND REMANDED.
NOTES
[1] State v. Guidry, et al., 03-1944 (La.11/21/03), 862 So.2d 965.
[2] 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
[3] Transcript, pp. 5-6, 14.
[4] Transcript, pp. 7-8.
[5] Transcript, p. 13.
[6] Transcript, p. 14.
[7] Transcript, pp. 6, 40, 46.
[8] Writ Application, Exhibit 9.
[9] Transcript, p. 15.
[10] Transcript, pp. 15-16.
[11] Transcript, pp. 16-17.
[12] Exhibit 9.
[13] Transcript, p. 18.
[14] Transcript, p. 20.
[15] Transcript, pp. 19-20.
[16] Transcript, pp. 21-22.
[17] Transcript, pp. 23-25.
[18] See, n. 4, supra.
[19] U.S. Const., Amend. IV; La. Const., Art. 1, § 5. State v. Johnson, 408 So.2d 1280, 1285 (La.1982).
[20] 02-924 (La.App. 5 Cir. 1/28/03), 839 So.2d 296, 299.
[21] 839 So.2d at 299.
[22] Id.
[23] 839 So.2d at 300 citing Leon, 468 U.S. at 923, 104 S.Ct. at 3421.
[24] Leon, 468 U.S. at 922, 104 S.Ct. at 3420.
[25] 98-1239 (La.App. 1 Cir. 4/1/99), 734 So.2d 80, 82-83.
[26] Leon noted that nothing in its opinion suggested that an officer could obtain a warrant on the basis of a "bare bones" affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search. 104 S.Ct. at 3420, n. 24.
[27] 943 F.2d 547, 550 (5th Cir.1991).
[28] 943 F.2d at 548.
[29] 943 F.2d at 549.
[30] 943 F.2d at 550.
[31] 943 F.2d at 548.
[32] Id. at 551. Compare, State v. Tye, 2001 WI 124, 248 Wis.2d 530, 636 N.W.2d 473 (2001), where the Wisconsin Supreme Court declined to follow Richardson. Id. at 479 and 479, n. 29.
[33] 809 F.2d 665, 669 (10th Cir.1987). See also, United States v. Turner, 926 F.2d 883, 886 (9 th Cir.1991).