**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 9, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1398-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2018CF145

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JOHNATHAN L. JOHNSON,

   DEFENDANT-APPELLANT.

APPEAL from judgment of the circuit court for Vilas County: NEAL A. NIELSEN III, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    SEIDL, J.   Johnathan Johnson appeals a judgment, entered upon his no-contest plea, convicting him of fifth-offense operating a motor vehicle with a prohibited alcohol concentration (PAC). Johnson contends the circuit court erred, for two reasons, by denying his motion to suppress the results of an evidentiary

chemical test of his blood. First, Johnson argues his constitutional right to be free from unreasonable seizures was violated when a McDonald's restaurant employee delayed the delivery of Johnson's food order until officers responded to the employee's 911 call reporting that Johnson appeared to be operating his vehicle while intoxicated. Johnson reasons that because the 911 dispatcher stated "okay" in response to being informed by the employee of her decision to delay the delivery of Johnson's food, the State sanctioned a violation of a "fast food contract." Second, Johnson argues that the judge who authorized a search warrant for the collection of his blood administered an oath to the officer seeking the warrant that was "fundamentally defective" because the oath did not include the words "so help me God."

¶2 Regarding Johnson's first argument, we conclude that Johnson has failed to show the existence of—much less the violation of—a "fast food contract" that required the McDonald's employees to avoid delaying the delivery of his food. Further, because Johnson was not delayed at the McDonald's premises at the request of the State and was at all times free to leave prior to the arrival of law enforcement, we conclude that no seizure occurred.

¶3 As to Johnson's second argument, we conclude that the warrant authorizing the search was supported by a statement made under "oath or affirmation," as required by the Fourth Amendment to the United States Constitution, article I, section 11 of the Wisconsin Constitution, and various Wisconsin statutes. We reach this conclusion in light of our supreme court's statement that the validity of an oath or affirmation is a "matter of substance, not form," *see* **State v. Tye**, 2001 WI 124, ¶19, 248 Wis. 2d 530, 636 N.W.2d 473, in conjunction with the undisputed fact that the police officer seeking the search

2

warrant swore to the warrant-issuing judge that the statements made in the affidavit supporting the warrant application were true. Consequently, we affirm.

## BACKGROUND

¶4      On June 8, 2018, at approximately 1:30 a.m., Johnson drove his vehicle into the drive-thru lane of a McDonald's restaurant in Eagle River. Shortly thereafter, a McDonald's employee called 911 and the following exchange occurred:

> [Employee]: We have a super drunk guy in our drive[-thru] right now and we're holding him here until you guys get here.
>
> Dispatch: Ok.
>
> [Employee]: Um, there is an open container of booze in the car.
>
> Dispatch: Ok.
>
> [Employee]: And is there any other information you need from us?
>
> Dispatch: Okay, Okay, and I will go ahead and send an officer and you said that he is—is he in line right now waiting or-.
>
> [Employee]: Ah yeah, my drive[-thru] person pulled him ahead so he should be in one of the front spots waiting for his food.
>
> Dispatch: Ok.  I will send an officer over that way.

¶5      Vilas County sheriff's deputy Brook Lewis was dispatched to the McDonald's at 1:38 a.m., and she arrived on scene at approximately 1:41 a.m. After identifying the vehicle in question, she contacted the driver, who identified himself as Johnson.  Lewis observed that Johnson had "slow, thick, slurred

speech," and that there were open intoxicants in the vehicle. Johnson subsequently complied with Lewis' request that he exit the vehicle.

¶6    After Johnson exited the vehicle, Eagle River police officer Mark Collins—who had arrived on scene at approximately 1:43 a.m.—"took over contact" with Johnson. While Collins was speaking with Johnson, Collins detected an odor of intoxicants on Johnson's breath and also observed that Johnson had red, glassy eyes and slurred speech. After administering field sobriety tests, Collins arrested Johnson for operating a motor vehicle while intoxicated (OWI).

¶7    Collins then read Johnson the Informing the Accused form and asked Johnson whether he would submit to a chemical test of his blood. Johnson refused, and so Collins began the process of applying for a search warrant for Johnson's blood. As part of that process, Collins first drafted an affidavit in support of his search warrant application, which he then faxed to the on-duty judge.[1] In accordance with established protocol, both Collins and Judge Nielsen then separately called the sheriff's department and were placed on a three-way conference call with dispatch.

¶8    During the conference call, in reference to the faxed affidavit, Judge Nielsen asked Collins if "[i]t is your signature, and you swear all that's true; right?" Collins responded, "Yes, sir." Judge Nielsen ultimately issued the search

---

[1] We observe that the Honorable Neal A. Nielsen III was both the on-duty judge who authorized the search warrant to draw Johnson's blood and the judge who presided over the subsequent criminal proceedings against Johnson. To distinguish between Judge Nielsen's actions in issuing the search warrant and his subsequent decisions regarding the legality of the search warrant, we will refer to him as "Judge Nielsen" when discussing the former aspect of his involvement in this case and as the "circuit court" when discussing the latter.

warrant, and staff at a local hospital drew Johnson's blood. Testing later revealed Johnson's blood alcohol concentration was 0.187.

¶9 The State charged Johnson with OWI and PAC, both as fifth offenses. Johnson moved to dismiss the charges.[2] In support, Johnson argued that while acting as state agents, McDonald's employees impermissibly seized him in violation of the Fourth Amendment and a "fast food contract." He also argued that the blood draw was an unconstitutional search because the search warrant affidavit was not signed before a notary and the statements made in the affidavit were not given under oath or affirmation.

¶10 Following an evidentiary hearing, the circuit court denied Johnson's motion. Johnson subsequently pleaded no contest to fifth-offense PAC. He now appeals, challenging the denial of his suppression motion. *See* WIS. STAT. § 971.31(10) (2017-18).[3]

## DISCUSSION

¶11 When reviewing a circuit court's denial of a motion to suppress evidence, we apply a two-step standard. *State v. Lonkoski*, 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552. First, we uphold the court's findings of fact unless they are clearly erroneous. *Id.* Second, we independently apply constitutional principles to those facts. *Id.*

---

[2] In the circuit court, both the court and the parties treated Johnson's motion to dismiss as a motion to suppress evidence. We do the same on appeal.

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

## I. Seizure

¶12    The right to be secure against unreasonable searches and seizures is protected by both the Fourth Amendment to the United States Constitution and article 1, section 11 of the Wisconsin Constitution.  *State v. Dearborn*, 2010 WI 84, ¶14, 327 Wis. 2d 252, 786 N.W.2d 97.  Wisconsin courts generally interpret the Wisconsin Constitution's protections in this area identically to the protections under the Fourth Amendment as defined by the United States Supreme Court.[4]  *Id.* The Fourth Amendment applies to the actions of government agents, not to the actions of private individuals.  *See State v. Rogers*, 148 Wis. 2d 243, 246, 435 N.W.2d 275 (Ct. App. 1988).

¶13    Johnson argues that he was subjected to an unreasonable seizure within the meaning of the Fourth Amendment when the McDonald's employees delayed the delivery of his food order until police responded to the 911 call.  He reasons that the employees' delay constituted an unreasonable breach of a "fast food contract."  Further, because the employees' actions were "acquiesced in by dispatch," he contends that the employees were acting as government agents when they committed their alleged breach.

¶14    Johnson's argument is unavailing for at least three reasons.  First, Johnson fails to provide citation to any legal authority establishing the existence of a "fast food contract" governing the amount of time within which a fast food

---

[4] Unlike his argument regarding the legality of the search warrant, which we discuss below, Johnson does not argue that any exception to this general rule applies to his argument regarding his allegedly improper seizure.

employee must fulfill a customer's order.[5]  We need not consider unsupported arguments.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶15    Second, assuming that the McDonald's employees breached a "fast food contract" by delaying the delivery of Johnson's food order, it does not follow that their breach constituted a seizure of Johnson within the meaning of the Fourth Amendment.  "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave."  *State v. Williams*, 2002 WI 94, ¶4, 255 Wis. 2d 1, 646 N.W.2d 834 (citation omitted).  Johnson wholly fails to explain why a reasonable person would believe that he or she would not be free to leave a restaurant if they felt that their food order took too long to arrive.  Again, we need not consider undeveloped arguments.  *See Pettit*, 171 Wis. 2d at 646.

¶16    Finally, and again assuming that the McDonald's employees breached a "fast food contract" by delaying the delivery of Johnson's food order and further assuming that this breach constituted a seizure, we conclude that a constitutionally-protected seizure did not occur because the McDonald's employees were not acting as government agents when they delayed the delivery Johnson's food order.  Johnson's argument to the contrary rests on his assertion

---

[5] In the circuit court, Johnson relied on *Betehia v. Cape Cod Corp.*, 10 Wis. 2d 323, 327, 103 N.W.2d 64 (1960), to support the notion that a "fast food contract" exists.  As the State notes in its response brief, however, *Betehia*—which Johnson fails to address in his appellate briefs— held only that there is an "implied warranty of reasonable fitness of food for human consumption" when a business sells food for immediate consumption on its premises.  *Id.* Consequently, *Betehia* does not stand for the proposition that a contract exists requiring a restaurant to serve its meals within a specified period of time.

that when the 911 dispatcher gave her "acquiescence, or tacit approval" to the McDonald's employee's plan to keep Johnson on the premises, the employees were transformed into government agents.

¶17    We are not persuaded that "tacit approval" of a private individual's actions by a government agent is sufficient to implicate the Fourth Amendment.[6] Rather, we agree with the State that a government agent must "initiate, encourage or participate" in the private individual's action to bring that action within the ambit of the Fourth Amendment. *See State v. Payano-Roman*, 2006 WI 47, ¶18, 290 Wis. 2d 380, 714 N.W.2d 548. Stated differently, mere acknowledgment on the part of a government agent that a private individual intends to take a certain action does not give rise to the type of "joint endeavor" between private and government actors that is subject to the Fourth Amendment's prohibition against unreasonable searches and seizures. *See id.*, ¶19.

## II. Search Warrant

¶18    Johnson next argues that the search warrant authorizing the draw of his blood was invalid because it was not supported by a valid oath or affirmation. Our supreme court has "long recognized an oath or affirmation as an essential

---

[6] We observe that the case Johnson cites to support his assertion that an actor's tacit approval of an action creates an agency relationship is a civil case addressing the doctrine of apparent authority. *See Ivers & Pond Piano Co. v. Peckham*, 29 Wis. 2d 364, 370-71, 139 N.W.2d 57 (1966). Johnson fails to develop any argument explaining how or why this civil doctrine has applicability to a Fourth Amendment motion to suppress. We decline to abandon our neutrality to develop such an argument. *See State v. Gulrud*, 140 Wis. 2d 721, 730, 412 N.W.2d 139 (Ct. App. 1987).

prerequisite to obtaining a valid search warrant under the state constitution."[7] *Tye*, 248 Wis. 2d 530, ¶13. The difference between an oath and an affirmation is that the former invokes a reference to a deity, while the latter does not. *See affirmation*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "affirmation" as a "solemn pledge equivalent to an oath but without reference to a supreme being or to swearing; a solemn declaration made under penalty of perjury, but without an oath").

¶19 As explained by the *Tye* court, the purpose of an oath or an affirmation is to

> impress upon the swearing individual an appropriate sense of obligation to tell the truth. An oath or affirmation to support a search warrant reminds both the investigator seeking the search warrant and the magistrate issuing it of the importance and solemnity of the process involved. An oath or affirmation protects the target of the search from impermissible state action by creating liability for perjury or false swearing for those who abuse the warrant process by giving false or fraudulent information. An oath

---

[7] We note that the federal constitution, like the Wisconsin constitution, requires that a search warrant application be "supported by Oath or affirmation." U.S. CONST. amend. IV. Johnson confines his challenge to the validity of the search warrant in this case, however, to the "oath or affirmation" clause in the Wisconsin Constitution. He does so based upon his acknowledgement that "Fourth Amendment jurisprudence" considers the omission of certain words from an oath as a—in Johnson's words—"technical error only." *See, e.g.*, **United States v. Brooks**, 285 F.3d 1102, 1106 (8th Cir. 2002). The State, for its part, takes no issue with this characterization of Fourth Amendment jurisprudence.

Although Johnson's concession that a challenge to the validity of the search warrant brought under the Fourth Amendment would be without merit is well-taken, we question his use of the phrase "technical error" to refer to the omission of certain words from an oath. Indeed, in **Brooks**, the case Johnson cites to support his "technical error" statement, the court did not hold that any error—technical or otherwise—occurred when an affiant simply stated he had been "duly sworn" when preparing a search warrant application. *See id* at 1104-06. Instead, the **Brooks** court held that there was no Fourth Amendment violation at all because "a person may be under oath even though that person has not formally taken an oath by raising a hand and reciting formulaic words." *Id.* at 1106. In any event, because Johnson does not bring his challenge under the Fourth Amendment, we do not further discuss this issue.

> preserves the integrity of the search warrant process and thus protects the constitutionally guaranteed fundamental right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

*Tye*, 248 Wis. 2d 530, ¶19 (footnotes omitted).

¶20    Our legislature has "reinforced" our constitution's oath or affirmation requirement through its enactment of WIS. STAT. § 968.12(2). *See Tye*, 248 Wis. 2d 530, ¶11. That statute provides:

> A search warrant may be based upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter or under sub. (3)(d), showing probable cause therefor. The complaint, affidavit or testimony may be upon information and belief. The person requesting the warrant may swear to the complaint or affidavit before a notarial officer authorized under ch. 140 to take acknowledgments or before a judge, or a judge may place a person under oath[8] via telephone, radio, or other means of electronic communication, without the requirement of face-to-face contact, to swear to the complaint or affidavit. The judge shall indicate on the search warrant that the person so swore to the complaint or affidavit.

Sec. 968.12(2).

¶21    In addition, our legislature has provided that an "oath or affirmation [should be] administered in a form calculated to awaken the witness's conscience and impress the witness's mind with the witness's duty to [testify truthfully]." WIS. STAT. § 906.03(1). To that end, § 906.03 provides guidance on administering both an oath and an affirmation:

---

[8] WISCONSIN STAT. § 990.01(24) provides that when the term "oath" appears alone in a statute, it "includes affirmation in all cases where by law an affirmation may be substituted for an oath."

10

> (2) The oath may be administered substantially in the following form: Do you solemnly swear that the testimony you shall give in this matter shall be the truth, the whole truth and nothing but the truth, so help you God.
>
> (3) Every person who shall declare that the person has conscientious scruples against taking the oath, or swearing in the usual form, shall make a solemn declaration or affirmation, which may be in the following form: Do you solemnly, sincerely and truly declare and affirm that the testimony you shall give in this matter shall be the truth, the whole truth and nothing but the truth; and this you do under the pains and penalties of perjury.
>
> (4) The assent to the oath or affirmation by the person making it may be manifested by the uplifted hand.

This guidance notwithstanding, however, our supreme court has recognized that whether an oath or affirmation is valid is a "is a matter of substance, not form." *Tye*, 248 Wis. 2d 530, ¶19.

¶22 Johnson advances a number of arguments as to why officer Collins did not make his statements in support of his search warrant application upon a valid oath or affirmation. We address, and reject, each of his arguments in turn.

¶23 First, Johnson contends that officer Collins needed to take an oath or affirmation when he signed the affidavit itself "at the hospital"—i.e., before Collins spoke to Judge Nielsen on the telephone. We disagree. As set forth above, WIS. STAT. § 968.12(2) explicitly provides that "a judge may place a person under oath via telephone, radio, or other means of electronic communication, without the requirement of face-to-face contact, to swear to the complaint or affidavit." Thus, the statute, on its face, does not require that an affidavit submitted in support of a search warrant application be sworn to before the officer seeking the search warrant contacts a judge.

11

¶24    Second, Johnson asserts that Judge Nielsen did not place officer Collins under oath over the telephone because "the request to swear to the affidavit was not combined with [the phrase] 'so help me God.'"  Relatedly—and although Johnson recognizes that WIS. STAT. § 990.01(24) allows an affirmation to be substituted for an oath so as to satisfy WIS. STAT. § 968.12(2)—Johnson argues that when Collins swore to the truth of his statements he did not give an affirmation because "[t]here is no indication … Collins chose to affirm pursuant to § 990.01(41)."

¶25    As an initial matter, we reject Johnson's cursory argument that WIS. STAT. § 990.01(41) requires an individual to affirmatively choose whether to give an affirmation or an oath.  Section 990.01(41) simply states that the term "'Sworn' includes 'affirmed' in all cases where by law an affirmation may be substituted for an oath."  Nothing in this language even hints at a requirement that an explicit choice be made as to whether a sworn statement will be made under oath or by affirmation.

¶26    In his reply brief, Johnson expands on his "explicit choice" argument by asserting that WIS. STAT. § 906.03(3) requires "a witness [to] first decline to give an oath prior to being allowed to affirm the truth of forthcoming testimony."  We disagree.  As referenced above, § 906.03(3) states that "[e]very person who shall declare that the person has conscientious scruples against taking the oath, or swearing in the usual form, shall make a solemn declaration or affirmation."  Far from requiring a person to decline to give an oath before they are allowed to give an affirmation, this language simply ensures that a person cannot be dragooned into giving an oath when they would prefer to give an affirmation.

12

¶27 Turning to the merits of Johnson's "so help me God" argument, we conclude that the omission of those words did not render the search warrant invalid, for two reasons. First, we have previously rejected the argument that an oath does not comply with WIS. STAT. § 990.01(24) simply because it does not include the words "so help me God." *See* ***Redner v. Berning***, 153 Wis. 2d 383, 394, 450 N.W.2d 808 (Ct. App. 1989).

¶28 Although Johnson recognizes that we are bound by our prior published decisions,[9] he argues that ***Redner*** is materially distinguishable because that case involved "election matters, which support political debate," whereas the search warrant application in this case involves "court proceedings, which seek the truth." We are not persuaded by Johnson's attempt to materially distinguish ***Redner***. Again, the "purpose of an oath or an affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth." ***Tye***, 248 Wis. 2d 530, ¶19. Thus, any time an oath or affirmation is required by law, its purpose is to facilitate a search for the truth—whether in the context of "election matters" or "court proceedings."

¶29 Second, even if we could ignore the holding of ***Redner*** and conclude that officer Collins did not take a valid oath due to the omission of the words "so help me God," it does not follow that the search warrant was invalid. Again, the validity of an oath or an affirmation is a "matter of substance, not form." ***Tye***, 248 Wis. 2d 530, ¶19. At bottom, the requirement for a statement to be made under oath or affirmation is simply that the statement "must be sworn to." ***State v. Baltes***, 183 Wis. 545, 552, 198 N.W. 282 (1924); *see also* 2 WAYNE R. LAFAVE

---

[9] *See* ***Cook v. Cook***, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997).

ET. AL., CRIMINAL PROCEDURE § 3.4(c) (4th ed. 2019) ("[T]he 'Oath or affirmation' requirement means the information must be sworn to. 'No particular ceremony is necessary to constitute the act of swearing[.]'" (citations omitted)).

¶30    Here, Judge Nielsen undisputedly asked officer Collins if he swore to the truth of his statements provided in support of his search warrant application, and Collins undisputedly responded that he did. We conclude this exchange sufficiently "remind[ed] both the investigator seeking the search warrant and the magistrate issuing it of the importance and solemnity of the process involved." *See Tye*, 248 Wis. 2d 530, ¶19. The search warrant was therefore properly supported by oath or affirmation.

¶31    Johnson next argues that officer Collins did not give sworn testimony because he could not be charged with perjury[10] for the statements he gave to Judge Nielsen. In support of this argument, he notes that one of the elements of a perjury charge is that the accused was "sworn and testified." *See Brown v. State*, 91 Wis. 245, 248, 64 N.W. 749 (1895). Based on his assertion that "Collins was not sworn in," Johnson thus concludes Collins could not have been charged with perjury.

¶32    Johnson's argument is circular. For the reasons we explained above, officer Collins was sworn in when gave his statements to Judge Nielsen. Accordingly, Collins could have been charged with perjury if he had made a

---

[10] *See* WIS. STAT. § 946.31(1) ("Whoever under oath or affirmation orally makes a false material statement which the person does not believe to be true, in any matter, cause, action or proceeding, before any of the following, whether legally constituted or exercising powers as if legally constituted, is guilty of a Class H felony[.]").

material statement that he did not believe to be true—which, we clarify, Collins is not alleged to have done.

¶33 Finally, we note that although the validity of an oath or affirmation is a "matter of substance, not form," we consider the better practice for all parties involved in the search warrant application process is to utilize the directory methods of administering an oath or affirmation that our legislature has provided in WIS. STAT. § 906.03(2) and (3). For all the reasons set forth, however, the failure to do so in this case did not invalidate the search warrant.[11]

> *By the Court.*—Judgment affirmed.

> Not recommended for publication in the official reports.

---

[11] The State argues that even if the search warrant at issue was not supported by a valid oath or affirmation, the results of Johnson's blood test should still be admissible pursuant to the good faith doctrine. Given our disposition of this case, and because we decide cases on the narrowest possible grounds, we need not, and do not, address this argument. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).