# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP2184-CR |

COMPLETE TITLE:   State of Wisconsin,
              Plaintiff-Respondent,
         v.
      Jeffrey L. Moeser,
              Defendant-Appellant-Petitioner.

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 398 Wis. 2d 795, 963 N.W.2d 576
(2021 – unpublished)

| | |
|---|---|
| OPINION FILED: | November 23, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 6, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Portage |
| JUDGE: | Robert J. Shannon |

JUSTICES:
ZIEGLER, C.J., delivered the majority opinion of the Court, in which ROGGENSACK, REBECCA GRASSL BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a concurring opinion, in which KAROFSKY, J., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which DALLET, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

    For the defendant-appellant-petitioner, there was a brief filed by *John T. Bayer* and *Bayer Law Offices*, Milwaukee. There was an oral argument by *John T. Bayer*.

    For the plaintiff-respondent, there was a brief filed by *John W. Kellis*, assistant attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *John W. Kellis,* assistant attorney general.

2022 WI 76

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP2184-CR
(L.C. No. 2017CF515)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,

  v.

Jeffrey L. Moeser,

    Defendant-Appellant-Petitioner.

**FILED**

**NOV 23, 2022**

Sheila T. Reiff
Clerk of Supreme Court

---

ZIEGLER, C.J., delivered the majority opinion of the Court, in which ROGGENSACK, REBECCA GRASSL BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a concurring opinion, in which KAROFSKY, J., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which DALLET, J., joined.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, C.J. This is a review of an unpublished decision of the court of appeals, State v. Moeser, No. 2019AP2184-CR, unpublished slip op. (Wis. Ct. App. June 24, 2021), affirming the Portage County circuit court's[1] denial of Jeffrey Moeser's motion to suppress evidence. Moeser was convicted of operating while intoxicated (OWI) sixth

---

[1] The Honorable Robert Shannon presided.

offense, contrary to Wis. Stat. § 346.63(1)(a) (2019-20).[2] We affirm.

¶2 Moeser challenges the warrant which compelled him to submit to a blood draw. He argues that the warrant is constitutionally defective because the affiant was not placed under oath or affirmation when he signed the affidavit which accompanied the warrant application. According to Moeser, this omission failed to satisfy the requirement under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution that warrant applications be "supported by oath or affirmation."[3] As a result, Moeser argues that the circuit court erroneously denied his motion to suppress evidence and that the court of appeals erred in affirming that decision.

¶3 We conclude that the affidavit fulfilled the oath or affirmation requirement under the United States and Wisconsin constitutions because "[t]he purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth," and here the officer was impressed with that obligation. State v. Tye, 2001 WI 124, ¶19,

---

[2] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

[3] All subsequent references to the constitutional oath or affirmation requirements in both the United States and Wisconsin constitutions are hereinafter referred to collectively, sometimes as "the constitutional oath or affirmation requirement" or "Fourth Amendment requirement," unless otherwise noted.

248 Wis. 2d 530, 636 N.W.2d 473; accord U.S. const. amend. IV; Wis. Const. art. I, § 11. In other words, the constitutional guarantee is satisfied because the facts and circumstances demonstrate that Sergeant Brown executed this affidavit "in a form calculated to awaken [Sergeant Brown's] conscience and impress [his] mind with [his] duty to [tell the truth]." Wis. Stat. § 906.03(1); accord Tye, 248 Wis. 2d 530, ¶19. The United States and Wisconsin constitutions do not require that any specific language or procedure be employed in the administration of an oath or affirmation. Instead, constitutional requirements, relevant case law, and the Wisconsin Statutes all indicate that the oath or affirmation requirement is an issue of substance, not form. Here, the facts sufficiently demonstrate that the constitutional right to be free from abusive governmental searches is satisfied. Therefore, the circuit court did not err in denying Moeser's motion to suppress, and the court of appeals is affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶4 On October 14, 2017, at about 1:30 a.m., Sergeant Steven Brown of the Portage County Sheriff's Office stopped Jeffrey Moeser for suspected OWI. A record check return revealed that Moeser had five prior convictions for operating while intoxicated. Sergeant Brown administered field sobriety tests as well as a preliminary breathalyzer test. The breathalyzer test returned a blood alcohol content (BAC) of 0.195 percent. Because of his prior convictions, the legal limit for Moeser was a BAC of 0.02 percent. See Wis. Stat.

3

§ 340.01(46m)(c). Sergeant Brown then arrested Moeser for suspected drunk driving and transported him to St. Michael's Hospital in Stevens Point, Wisconsin, for a blood draw.

¶5 Once at the hospital, Moeser refused to consent to a blood draw, causing Sergeant Brown to seek a search warrant. The affidavit in support of the warrant was completed by Sergeant Brown in the presence of Lieutenant Jacob Wills, a notary public.

¶6 The document was titled, "AFFIDAVIT." At the beginning of the affidavit, Sergeant Brown handwrote his name before the text, "being first duly sworn on oath, deposes and says." The second paragraph stated, "I have personal knowledge that the contents of this affidavit are true and that any observations or conclusions of fellow officers referenced in this affidavit are truthful and reliable." Immediately following that section, Sergeant Brown personally penned in the probable cause section, which contained facts specific to Moeser's arrest. Sergeant Brown then signed and dated the affidavit, noting that it was completed at St. Michael's Hospital before Lieutenant Wills. Sergeant Brown's signature line was immediately above the jurat,[4] which read, "Subscribed and sworn to before me." Lieutenant Wills notarized the affidavit by signing it and affixing his seal. A judicial

---

[4] A jurat is "[a] certification added to an affidavit or deposition stating when and before what authority the affidavit or deposition was made." Jurat, Black's Law Dictionary (11th ed. 2019).

4

officer came to the hospital and approved the warrant application at 3:07 a.m.

¶7 Moeser's blood was drawn pursuant to the warrant and revealed a BAC of 0.220 g/100mL. The State filed a criminal complaint charging Moeser with OWI sixth offense, contrary to Wis. Stat. § 346.63(1)(a), and operating with a prohibited alcohol concentration sixth offense, contrary to Wis. Stat. § 346.63(1)(b), both felony charges.

¶8 Moeser filed a motion to suppress the blood test evidence, arguing that the warrant did not satisfy constitutional oath or affirmation requirements because Sergeant Brown was not placed under oath or affirmation. It is undisputed that Sergeant Brown made no oral oath or affirmation, either before or after signing the affidavit. It is also undisputed that he made no such oath or affirmation before the judicial officer.

¶9 The State argued that Sergeant Brown was under oath or affirmation because the language of the affidavit clearly manifested the intention to be under oath.

¶10 The circuit court heard the motion on stipulated facts and orally denied Moeser's motion to suppress. The circuit court found that "the language in the affidavit indicates . . . that Sergeant Brown swore to the truth of the information provided in the affidavit." It found that "Sergeant Brown did realize that he was swearing to the truth of what he indicated in his affidavit." The circuit court denied Moeser's motion and subsequently memorialized that ruling by written

5

order. The order stated, "The motion to suppress blood test evidence based upon noncompliance with the oath requirement is denied." Thereafter, Moeser pled guilty to OWI sixth offense, and was sentenced.

¶11 Moeser filed a notice of appeal, and the court of appeals affirmed. Moeser, No. 2019AP2184-CR. The court of appeals concluded that Sergeant Brown's affidavit was not constitutionally defective. Id., ¶22.

¶12 Moeser petitioned this court for review, which we granted.

## II. STANDARD OF REVIEW

¶13 "Review of a decision denying a motion to suppress" under the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution "presents a question of constitutional fact." State v. Coffee, 2020 WI 53, ¶19, 391 Wis. 2d 831, 943 N.W.2d 845. Under a two-step standard of review, we first "uphold a circuit court's findings of historic fact unless they are clearly erroneous." State v. Dumstrey, 2016 WI 3, ¶13, 366 Wis. 2d 64, 873 N.W.2d 502. We then "independently apply constitutional principles to those facts." State v. Robinson, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463.

¶14 This case also requires us to interpret statutes. "Interpretation of a statute is a question of law that we review de novo, although we benefit from the analyses of the circuit court and the court of appeals." Est. of Miller v. Storey, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759.

6

III. ANALYSIS

¶15 On appeal, Moeser does not challenge whether there was probable cause to arrest him, nor does he challenge that there was probable cause in the affidavit. Rather, he argues that Sergeant Brown was not administered any oath or affirmation and, therefore, the warrant is constitutionally defective. The State responds that the oath or affirmation requirement was met because Sergeant Brown swore to or affirmed the facts of the affidavit. In other words, the State asserts that Sergeant Brown manifested "the intent to be bound by his . . . statement under circumstances that emphasize the need to tell the truth."

¶16 In analyzing these arguments, we will first discuss the oath or affirmation requirement under the United States and Wisconsin constitutions. We then turn to relevant case law. After that, we analyze Wisconsin Statutes' oath or affirmation requirements. In short, these sources lead to the conclusion that Sergeant Brown's affidavit survives constitutional scrutiny.

A. Constitutional Requirements

¶17 The United States and Wisconsin constitutions protect and guarantee that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

affirmation."[5] U.S. Const. amend. IV; accord Wis. Const. art. I, § 11. Consequently, an oath or affirmation is an "essential prerequisite to the issuance of a valid search warrant" under both our state and federal constitutions. Tye, 248 Wis. 2d 530, ¶13 (quoting State v. Baltes, 183 Wis. 545, 552, 198 N.W.2d 282 (1924)). When it comes to the administration of an oath or affirmation, neither constitution requires that specific language or procedure be used.

¶18 The terms "oath" and "affirmation" have long been understood broadly and require no specific language or procedure. In the 1744 case of Omychund v. Barker, Lord Chief Baron Parker of the English Exchequer of Pleas expressed a broad view of oaths: "[An oath's] forms are various. . . . It is plain that by the policy of all countries, oaths are to be administered to all persons according to their own opinion, and as it most affects their conscience . . . ." Omychund v. Barker, 26 Eng. Rep. 15, 29 (High Ct. Ch. 1744). Accordingly, the court held that a member of the Hindu[6] religion could swear an oath before testifying according to his own custom. Id. at

---

[5] "Historically, we generally have interpreted Article I, Section 11 [of the Wisconsin Constitution] to provide the same constitutional guarantees as the Supreme Court has accorded through its interpretation of the Fourth Amendment." State v. Kramer, 2009 WI 14, ¶18, 315 Wis. 2d 414, 759 N.W.2d 598.

[6] The English Exchequer of Pleas used a now derogatory term which referred to members of the Hindu religion. See Gentoo, Oxford English Dictionary (3d ed. 2021) (a "[n]ow historical and rare" term describing "[a] non-Muslim inhabitant of Hindustan or India; a Hindu"). We instead use the term "Hindu."

8

27-34. Whereas the court's usual custom was "use of the corporal ceremony, the kissing of the Evangelists," Hindus were permitted to swear oaths by touching the foot of a Hindu priest. Id. at 15, 21. In 1788, the High Court of Errors of Pennsylvania echoed this broad view. Lewis v. Maris, 1 U.S. (1 Dall.) 278, 288 (Pa. Ct. Err. & App. 1788) (recognizing oath as valid regardless of the precise ceremony performed).

¶19 During the Founding era, an "oath" was "an affirmation or denial of any thing, before one or more persons who have authority to administer the same, for the discovery and advancement of truth and right, calling God to witness, that the testimony is true." Oath, Giles Jacob, A New Law Dictionary (J. Morgan ed., 10th ed. 1782). An "affirmation" was "[a]n indulgence allowed by law to the people called quakers, who in cases where an oath is required from others, may make a solemn affirmation that what they say is true; and if they make a false affirmation, they are subject to the penalties of perjury."[7] Affirmation, Jacob, supra. In fact, it was recognized during the Founding that an "oath" could be written rather than spoken: "Affidavit, Signifies in law an oath in writing; and to make affidavit of a thing, is to testify upon oath." Affidavit,

---

[7] These definitions remain largely the same today. In Black's Law Dictionary, an "oath" is "[a] solemn declaration, accompanied by a swearing to god or a revered person or thing, that one's statement is true or that one will be bound to a promise." Oath, Black's Law Dictionary, supra note 4. An "affirmation" is a "solemn pledge equivalent to an oath but without reference to a supreme being or to swearing." Affirmation, Black's Law Dictionary, supra note 4.

Jacob, supra. These definitions do not require that any specific language or procedure be used in their administration.

¶20 "The Constitution's text does not alone resolve this case. . . . We must therefore turn to the historical background of the [text] to understand its meaning." Crawford v. Washington, 541 U.S. 36, 42-44 (2004). Originating in the 17th century, "English law required officials seeking search warrants to swear an oath as a means of controlling the unfettered discretion of the searcher." Tye, 248 Wis. 2d 530, ¶8. That requirement was removed, and general warrants, or Writs of Assistance, were prone to abuse. Id. In Gray v. Paxton, 1 Quincy 541 (Mass. Super. Ct. 1761), a case involving Writs of Assistance, Boston attorney James Otis Jr. delivered a five-hour speech where he criticized, among other things, this lack of an oath requirement: "Their menial servants may enter, may break locks, bars, and everything in their way; and whether they break through malice or revenge, no man, no court can inquire. Bare suspicion without oath is sufficient." James Otis Jr., Against Writs of Assistance (Feb. 24, 1761). Among those in the audience was John Adams, who described the speech as having "breathed into this nation the breath of life" and "the first scene of opposition to the arbitrary claims of Great Britain. Then and there the child Independence was born." Charles Francis Adams, The Life and Works of John Adams 276 (1856).

¶21 Accordingly, many states adopted oath or affirmation requirements in their constitutions. For example, Maryland's

10

constitution provided a very general procedure for administering oaths:

> That the manner of administering an oath to any person, ought to be such as those of the religious persuasion, profession or denomination of which such person is one, generally esteem the most effectual confirmation, by the attestation of the Divine Being. And that the people . . . holding it unlawful to take an oath on any occasion, ought to be allowed to make their solemn affirmation, in the manner that quakers have been heretofore allowed to affirm . . . .

Md. Const. Decl. of Rts. art. XXXVI (1776). In contrast, Pennsylvania's constitution adopted no general procedure but did require certain specific oaths, such as for public officials: "I . . . do swear (or affirm) that I will faithfully execute the office of . . . for the . . . of . . . and will do equal right and justice to all men, to the best of my judgment and abilities, according to law." Pa. Const. § 40 (1776). Similarly, in its first act, Congress prescribed the language and procedure to fulfill the requirement under Article VI, Section 3 that senators and representatives "be bound by Oath or Affirmation, to support this Constitution." That act stated:

> That the oath or affirmation required by the sixth article of the Constitution of the United States, shall be administered in the form following, to wit, "I, A.B. do solemnly swear or affirm (as the case may be) that I will support the Constitution of the United States." The said oath or affirmation shall be administered within three days after the passing of this act, by any one member of the Senate, to the President of the Senate, and by him to all the members and to the Secretary . . . .

An Act to Regulate the Time and Manner of Administering Certain Oaths, ch. 1, § 1, 1 Stat. 23 (1789). These examples

11

demonstrate a broad spectrum of how specific an oath requirement could be. The Founders knew how to write a more demanding oath or affirmation requirement. However, they did not do so in the Constitution's oath or affirmation requirement.

¶22 The historical background and definitions show that the Fourth Amendment requirement was meant to prohibit warrants that are not supported by any oath or affirmation at all, such as Writs of Assistance. However, there is no indication that any specific language or procedure is necessary. Where the founding generation believed that specific words or procedures were required to fulfil an oath requirement, the text said so. Absent an express statement to the contrary, oaths were broadly understood——an oath could include an affidavit, swearing before God, or even touching a priest's feet.

¶23 In short, the words "oath" and "affirmation" are not specifically defined in the language of either the United States or Wisconsin constitutions, nor does either constitution mandate that any specific language or procedure be used in oath or affirmation administration.

B. Case Law

¶24 We next turn to constitutional oath or affirmation requirements in case law. The constitutional analysis in case law similarly does not support Moeser's call for rigid oath or affirmation administration requirements. Instead, case law consistently elevates substance over form when it comes to the administration of an oath or affirmation, and courts across the

country have declined to impose rigid rules, "magic words" requirements, or formal procedures.

¶25 Whether the constitutional oath or affirmation administration requirement is rigid and specific was previously considered in State v. Tye, where we concluded that the requirement "is a matter of substance, not form, and it is an essential component of the Fourth Amendment and legal proceedings." Tye, 248 Wis. 2d 530, ¶19. In Tye, an investigator drafted an affidavit in support of a search warrant application but never took an oath or affirmation and also failed to sign the affidavit. Id., ¶¶4-5. Nonetheless, a judicial officer issued the warrant, and the search was conducted. Id., ¶¶5-6. The defense successfully sought to suppress the evidence obtained. Id., ¶2.

¶26 On appeal, because the affidavit in Tye was completely lacking, we affirmed the suppression. The court nonetheless recognized that "[t]he purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth." Id., ¶19. Tye rejected the call to impose rigid rules or magic words to govern the administration of oaths or affirmations. Id.; see also State v. Johnson, No. 2019AP1398-CR, unpublished slip op., ¶33 (Wis. Ct. App. Sept. 9, 2020) ("[W]e note that although the validity of an oath or affirmation is a 'matter of substance, not form,' we consider the better practice for all parties involved in the search warrant application process is to utilize the directory methods of administering an oath or affirmation that our

13

legislature has proved in Wis. Stat. § 906.03(2) and (3). . . . [H]owever, the failure to do so in this case did not invalidate the search warrant.") (footnote omitted) (quoting Tye, 248 Wis. 2d 530, ¶19).

¶27 We note that Tye's interpretation of the Fourth Amendment oath or affirmation requirement is consistent with oath or affirmation administration in non-Fourth Amendment contexts. The court of appeals in this case relied heavily upon Kellner v. Christian, 197 Wis. 2d 183, 539 N.W.2d 685 (1995), a civil case. Moeser, No. 2019AP2184-CR, ¶¶19-23. While not inconsistent with the principles in Tye, Kellner is nonetheless distinguishable because constitutional oath or affirmation requirements were never argued or considered. Kellner is also distinguishable because it was based upon a specific statute which is inapplicable here. That statute concerned a requirement that claims against state employees be "sworn." Kellner, 197 Wis. 2d at 194. The statute had the purpose of ensuring that the attorney general could effectively review claims in a timely and cost-effective manner. Id. Kellner, however, did reiterate that the oath must "impress the person who takes the oath with a due sense of obligation" to tell the truth. Id. at 192.

¶28 As a result, Wisconsin case law broadly recognizes that "[t]he purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth." Tye, 248 Wis. 2d 530, ¶19. There are no rigid

14

requirements or magic words. It is a matter of substance, not form.

¶29 Moeser spends much of his argument attempting to distinguish United States v. Brooks, 285 F.3d 1102 (8th Cir. 2002), and United States v. Fredericks, 273 F. Supp. 2d 1032 (D.N.D. 2003), both of which found the oath or affirmation requirement satisfied. He argues that the cases are distinguishable because Sergeant Brown's affidavit uses different words than the affidavits in those cases. He also argues that those cases are distinguishable because Sergeant Brown did not personally present the affidavit to the judicial officer. However, Moeser's arguments elevate form over substance, failing to acknowledge that "[t]he purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth." Tye, 248 Wis. 2d 530, ¶19.

¶30 In Brooks, the Eighth Circuit concluded that, despite not being given an oral oath, the affiant officer was deemed to be under oath because:

> [H]e intended to undertake and did undertake that obligation by the statements he made in his affidavit and by his attendant conduct. In other words, a person may be under oath even though that person has not formally taken an oath by raising a hand and reciting formulaic words.

Brooks, 285 F.3d at 1106; see also 3 Am. Jur. 2d Affidavits § 7 (2022) ("It is not essential that the affiant should hold up his hand and swear in order to make his act an oath, but it is sufficient if both affiant and the officer understand that what

15

is done is all that is necessary to complete the act of swearing.").

¶31 The court in Fredericks, like Brooks, concluded that a person may be deemed to be under oath in the absence of a raised hand or oral recitation:

> In determining whether the Fourth Amendment's oath or affirmation requirement has been fulfilled, the Court may consider the language used in the search warrant application as well as the applicant's conduct. [Brooks,] 285 F.3d 1102, 1105-06. As the Eighth Circuit Court of Appeals explained in [Brooks], a person may be under oath even though that person has not formally taken an oath by raising a hand and reciting formulaic words.
>
> Almost all of the apposite cases indicate that this is the relevant inquiry because a person who manifests an intention to be under oath is in fact under oath. In Atwood v. State, 146 Miss. 662, 111 So. 865, 866 (1927), for instance, where both the law enforcement officer, who signed the affidavit in the presence of a justice of the peace, and the justice of peace, who affixed his jurat, knew an oath was required and did what they thought was necessary for the administration of an oath, the court concluded that "by construction, what occurred amounted to the taking of the necessary oath." The court added that "[o]ne may speak as plainly and effectually by his acts and conduct as he can by word of mouth." Id.
>
> The Court finds that, under the circumstances, [the officer's] "Affidavit for Search Warrant" satisfied the oath or affirmation requirement and that the search warrant was not issued in violation of the Fourth Amendment. The Affidavit begins by stating "that the undersigned being duly sworn deposes and states to the Court . . . ." Additionally, the Affidavit reveals that [the officer] signed the document upon presentation to the tribal court and [the judge] attested that the Affidavit was sworn to and subscribed by [the officer] in her presence.

16

> The nature of the document as well as [the officer's] attendant conduct indicates that [the officer] realized that he was swearing to the truth of what he said. [His] recitation that he was "duly sworn" reflects his intention to be under oath. [His] conduct was also consistent with this intention as he took the document to a tribal court judge and signed it in her presence. As it is apparent that [the officer] had manifested an intent to be under oath, as such, he can be considered to be under oath for Fourth Amendment purposes.

Fredericks, 273 F. Supp. 2d at 1037-38.[8]

¶32 Professor Wayne LaFave has instructed that, "No particular ceremony is necessary to constitute the act of swearing . . . . It is only necessary that something be done in the presence of the magistrate issuing the search warrant which is understood by both the magistrate and the affiant to constitute the act of swearing." 2 Wayne R. LaFave, et al., Criminal Procedure § 3.4(c) (4th ed. 2021) (footnotes omitted) (quoting Simon v. State, 515 P.2d 1161, 1165 (Okla. Crim. App. 1973)). Several federal cases are in accord that "a person who manifests an intention to be under oath is in fact under oath." Brooks, 285 F.3d at 1105; accord United States v. Bueno-Vargas, 383 F.3d 1104, 1111 (9th Cir. 2004) (holding that "signing a statement under penalty of perjury satisfies the standard for an

---

[8] Moeser also finds Brooks and Fredericks distinguishable because here the Sheriff's Office had a procedure that did not require administering an oral oath, which the State conceded was erroneous. However, "we are not bound by the parties' interpretation of the law or obligated to accept a party's concession of law." State v. Carter, 2010 WI 77, ¶50, 327 Wis. 2d 1, 785 N.W.2d 516. Regardless, this does not affect our conclusion that the facts and circumstances overall demonstrate that Sergeant Brown was impressed with the need to tell the truth.

17

oath or affirmation, as it is a signal that the declarant understands the legal significance of the declarant's statements and the potential for punishment if the declarant lies"); United States v. Richardson, 943 F.2d 547, 549 (5th Cir. 1991) (holding a statement was not an oath or affirmation because it "did not manifest a recognition of [the affiant's] duty to speak the truth"); United States v. Mensah, 737 F.3d 789, 805-06 (1st Cir. 2013) (requiring no verbal act to find a defendant "under oath" for purposes of perjury).

¶33 Similarly, contrary to Moeser's arguments, numerous state court jurisdictions decline to impose rigid rules or procedures, instead concluding that the oath requirement is a matter of substance over form. See, e.g., Atwood, 111 So. at 866 ("The form of the oath is immaterial so long as it appeals to the conscience of the party making it, and binds him to speak the truth."); State v. Kemp, 20 P.2d 499, 500 (Kan. 1933) (affiant not formally sworn but deemed to have been sworn when he completed an affidavit before a notary); Farrow v. State, 112 P.2d 186, 190 (Okla. Crim. App. 1941) (deputy who was not formally sworn, but read and signed an affidavit, deemed to be under oath); State v. Knight, 995 P.2d 1033, 1041-42 (N.M. Ct. App. 2000) ("[T]he important nature of the affidavits in this instance and [the officer's] exercise of the formalities in completing the affidavits sufficiently fulfilled the requirements of an oath or affirmation."); State v. Douglas, 428 P.2d 535, 538-39 (Wash. 1967) (no formal oath orally administered but text of affidavit nonetheless showed

18

constitutional compliance); State v. Gutierrez-Perez, 337 P.3d 205, ¶¶4, 28 (Utah 2014) (although no oral oath or affirmation was made, court determined that a checked box on an electronic application for a warrant stating, "By submitting this affidavit, I declare under criminal penalty of the State of Utah that the foregoing is true and correct," was "more than enough to impress upon [the affiant] the solemnity of the occasion").

¶34 Courts in many other jurisdictions, including Alaska, California, Idaho, Iowa, Louisiana, Minnesota, Nebraska, New Jersey, Ohio, and South Carolina, "have held that a verbal admonishment is not necessary to constitute an 'oath.'" People v. Ramos, 424 N.W.2d 509, 519 n.36 (Mich. 1988) (collecting cases); Blackburn v. Motor Vehicles Div., 576 P.2d 1267, 1269-70 (Or. Ct. App. 1978) (also collecting cases) ("[M]erely signing a form of affidavit in the presence of a notary or an official authorized to administer an oath is sufficient.").

¶35 This survey of case law hence confirms that no particular "magic words" or specific procedures are constitutionally required in order for an individual to be deemed to be under oath. Instead, cases elevate substance over form, recognizing that "[t]he purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth."[9] Tye, 248 Wis. 2d 530, ¶19.

_____

[9] Two other cases Moeser cites as supporting more rigid requirements are State v. Hodges, 595 S.W.3d 303 (Tex. Ct. App. 2020), and Markey v. State, 37 So. 53 (Fla. 1904). In Hodges, the Texas Court of Appeals held that an officer who completed an affidavit before a notary did not satisfy the oath or affirmation requirement because there was no oral oath. Hodges,

19

¶36 As a result, Wisconsin is in good company in concluding that an oath or affirmation may still be constitutionally compliant absent a prescribed oral script and specific procedure. When the facts or circumstances indicate that the oath or affirmation was administered "in a form calculated to awaken the [swearing individual's] conscience and impress [his or her] mind with [his or her] duty to [tell the truth]," then the oath or affirmation requirement is satisfied. Wis. Stat. § 906.03(1). In other words, we reaffirm the principle that "[t]he purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of

---

595 S.W.3d at 305-06. Though the affidavit stated that the affiant was "duly sworn," and the jurat said, "after being sworn by me," the court concluded that these statements were false because no oral oath was taken. Id. at 306. Wisconsin case law and many other federal and state cases do not support the rigid standard outlined in Hodges. Unlike Wisconsin's case law, Hodges appears to prioritize form over substance, and we decline to adopt that new standard.

As for the Florida Supreme Court's decision in Markey, that case is distinguishable. The issue in Markey was whether the defense could cross-examine witnesses to show that a defendant charged with perjury was not under oath. Markey, 37 So. at 59-60. The court's narrow ruling was that the phrase, "being duly sworn," was not conclusive proof of an oath for purposes of a criminal jury trial. Id. In fact, Markey recognized more generally that "[w]hile the oath must be solemnly administered, and by an officer duly authorized, it is immaterial in what form it is given." Id. at 59 (quoting 2 Francis Wharton & William Draper Lewis, A Treatise on Criminal Law § 1251 (1896)).

20

obligation to tell the truth." <u>Tye</u>, 248 Wis. 2d 530, ¶19. After all, "[a]n oath is a matter of substance, not form."[10] <u>Id.</u>

### C. Statutory Requirements

¶37 We next address the Wisconsin Statutes. Given the lack of specific constitutional requirements, we consider whether the Legislature has provided for even greater protection than that in the Constitution. However, Wisconsin Statutes likewise do not require any specific language or procedure for oath or affirmation administration.

¶38 For example, Wis. Stat. § 906.03, titled "Oath or affirmation," sets forth the following requirements for witnesses testifying:

(1) Before testifying, every witness shall be required to declare that the witness will testify truthfully, <u>by oath or affirmation</u> administered <u>in a form calculated to awaken the witness's conscience and impress the witness's mind with the witness's duty to do so</u>.

(2) The oath <u>may</u> be administered <u>substantially in the following form</u>: Do you solemnly swear that the testimony you shall give in this matter shall be the truth, the whole truth and nothing but the truth, so help you God.

(3) Every person who shall declare that the person has conscientious scruples against taking the oath, or swearing in the usual form, shall make a

---

[10] As Professor Wayne LaFave explains, "Whether the information is transmitted orally or in writing, the 'Oath or affirmation' requirement means the information must be sworn to. 'No particular ceremony is necessary to constitute the act of swearing.'" 2 Wayne R. LaFave, et al., <u>Criminal Procedure</u> § 3.4(c) (4th ed. 2021) (footnotes omitted) (quoting <u>Simon v. State</u>, 515 P.2d 1161, 1165 (Okla. Crim. App. 1973)).

solemn declaration or affirmation, which <u>may be in the
following form</u>: Do you solemnly, sincerely and truly
declare and affirm that the testimony you shall give
in this matter shall be the truth, the whole truth and
nothing but the truth; and this you do under the pains
and penalties of perjury.

> (4) The assent to the oath or affirmation by the
person making it <u>may be manifested</u> by the uplifted
hand.

§ 906.03 (emphases added). This statute repeatedly employs the
flexible language, "may," when it considers the administration
of an oath to a witness. Even though § 906.03 provides sample
language in two potential versions which "may" be used in the
administration of an oath or affirmation, it requires neither.
The statute requires only that an oath or affirmation be "in a
form calculated to awaken the witness's conscience and impress
the witness's mind with the witness's duty to [testify
truthfully]." § 906.03(1).

¶39 Similarly, Wis. Stat. § 887.03, titled "Oath, how
taken," states, "Any oath or affidavit required or authorized by
law <u>may</u> be taken in <u>any of the usual forms</u>, and every person
<u>swearing</u>, <u>affirming</u> or <u>declaring in any such form shall be
deemed to have been lawfully sworn</u>." § 887.03 (emphases added).
The language remains substantially the same since first enacted
in 1849, shortly after our state constitution was ratified.[11]

---

[11] Wisconsin Stat. § 887.03 was first enacted as Wis. Stat.
ch. 99, § 6 in 1849:

> In all cases in which an oath or affidavit is
required or authorized by law, the same may be taken
in any of the usual forms, and every person swearing,
affirming or declaring, in any such form, shall be
deemed to have been lawfully sworn, and to be guilty

22

This statute continues to provide considerable flexibility, as an oath or affirmation "may" be taken in any of the "usual forms." It also references that there are occasions where one may be "deemed to have" taken an oath: "every person swearing or declaring in any such form shall be deemed to have been lawfully sworn." As a result, § 887.03 declines to impose rigid rules governing oath administration.

¶40 More specifically, Wis. Stat. § 968.12, titled "Search warrant," states:

> (2) Warrant upon affidavit. A search warrant <u>may be based upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter</u> or under sub. (3)(d), showing probable cause therefor. The complaint, affidavit or testimony <u>may</u> be upon information and belief. The person requesting the warrant <u>may</u> swear to the complaint or affidavit before a notarial officer authorized under ch. 140 to take acknowledgments or before a judge, or a judge <u>may</u> place a person under oath via telephone, radio, or other means of electronic communication, without the requirement of face-to-face contact, to swear to the complaint or affidavit. The judge shall indicate on the search warrant that the person so swore to the complaint or affidavit.

§ 968.12(2) (emphases added).[12] This statute, by its language, also does not impose particular language or a specific procedure

---

of perjury for corruptly or falsely swearing, affirming or declaring in any such form.

The only major difference is the current version no longer includes the crime of perjury. That now exists under Wis. Stat. § 946.31(1).

[12] Wisconsin Stat. § 968.12 also provides:

> (1) Description and issuance. A search warrant is an order signed by a judge directing a law

23

for oath administration. In fact, it uses the permissive word, "may," concerning warrants based upon an affidavit. Id.

¶41 In short, the Wisconsin Statutes also do not invoke specific, mandated language or formulaic procedures in the administration of an oath or affirmation.

### D. Facts and Circumstances

¶42 We next consider the facts and circumstances in this case and conclude that Sergeant Brown satisfied the constitutional oath or affirmation requirement. Sergeant Brown's act of testifying to the court in the form of the affidavit was "calculated to awaken [Sergeant Brown's] conscience and impress [his] mind with [his] duty [to tell the truth]." Wis. Stat. § 906.03(1). We agree with the circuit court's conclusion that "the language in the affidavit indicates . . . that Sergeant Brown swore to the truth of the information provided in the affidavit." The facts in this case

---

enforcement officer to conduct a search of a designated person, a designated object or a designated place for the purpose of seizing designated property or kinds of property. A judge shall issue a search warrant if probable cause is shown.

. . . .

(3) Warrant upon oral testimony.

(a) General rule. A search warrant may be based upon sworn oral testimony communicated to the judge by telephone, radio or other means of electronic communication, under the procedure prescribed in this subsection.

§ 968.12(1), (3)(a).

24

further support that Sergeant Brown was sufficiently impressed with his duty to tell the truth.

¶43  We consider the language in the "AFFIDAVIT" Sergeant Brown signed.[13]  To review, the first sentence includes Sergeant Brown's handwritten name and states, "being first duly sworn on oath, deposes and says."  The first sentence of the second paragraph says, "I have personal knowledge that the contents of this affidavit are true."  Sergeant Brown then personally penned the probable cause section, detailing facts specific to Moeser's arrest.  Sergeant Brown signed and dated the affidavit directly above the jurat and indicated that the affidavit was completed at the hospital.  Lieutenant Wills signed and dated the jurat as "Subscribed and sworn to before me," and affixed his notary seal.

¶44  "The purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth."  Tye, 248 Wis. 2d 530, ¶19.  The language in Sergeant Brown's affidavit, his signature, and Lieutenant Wills' notarization satisfy this requirement.  Sergeant Brown wrote his name below the title, "AFFIDAVIT," and next to the words, "being

---

[13] An affidavit is, by definition, a sworn statement. See Affidavit, Giles Jacob, A New Law Dictionary (J. Morgan ed., 10th ed. 1782) ("Affidavit, Signifies in law an oath in writing; and to make affidavit of a thing, is to testify upon oath."); Affidavit, The American Heritage Dictionary of the English Language 29 (3d ed. 1992) ("A written declaration made under oath before a notary public or other authorized officer."); Affidavit, Black's Law Dictionary, supra note 4 ("A voluntary declaration of facts written down and sworn to by a declarant, usually before an officer authorized to administer oaths.").

first duly sworn on oath, deposes and says," both of which impressed that he was signing a sworn statement. Just two paragraphs down, the affidavit contained a statement expressly affirming that "the contents of this affidavit are true." Sergeant Brown completed the affidavit by verifying its contents with his signature just above the jurat, which again reminded him that the document was "sworn." Finally, in Sergeant Brown's presence, Lieutenant Wills further impressed the seriousness of the occasion by notarizing the affidavit.[14] The words in the affidavit impressed Sergeant Brown with the duty to tell the truth.[15] This placed Sergeant Brown under oath or affirmation and subjected him to the possibility of criminal penalty for

---

[14] Moeser makes much of the fact that Sergeant Brown did not himself swear before or present the affidavit to a judge. However, no constitutional language requires that procedure. Though it is "necessary that something be done in the presence of the magistrate issuing the search warrant," this requirement "should not be read literally, for 'Oath or affirmation' for Fourth Amendment purposes does not require a face-to-face confrontation between affiant and magistrate. Nor does it mean that a swearing before a notary or court clerk is insufficient." LaFave, et al., supra note 10, § 3.4(c) & n.51 (citations omitted); see also Oath, Jacob, supra note 13 (emphasis added) ("Oath . . . [i]s an affirmation or denial of any thing, before one or more persons who have authority to administer the same . . . ."); 3 Am. Jur. 2d Affidavits § 7 (2022) (footnotes omitted) ("The affiant must swear to the affidavit, and the fact of swearing must be certified by a proper officer. The notary and affiant must be present together for giving of oath."); Wis. Stat. § 968.12(2) ("The person requesting the warrant may swear to the complaint or affidavit before a notarial officer . . . or before a judge . . . .").

[15] Moeser argues that Sergeant Brown's use of a preprinted form undermines the solemnness. This argument too elevates the affidavit's form over its substance.

false swearing if he knowingly lied. See Wis. Stat. § 946.32(2); LaFave et al., supra ¶32 (quoting Simon, 515 P.2d at 1165) ("[T]he 'true test' is whether the procedures followed were such 'that perjury could be charged therein if any material allegation contained therein is false.'").

¶45 The case law supports this conclusion. Sergeant Brown's affidavit contains far more than the affidavit in Tye, where the oath or affirmation requirement was not satisfied because the officer failed to either sign or swear to the truth of the affidavit. See Tye, 248 Wis. 2d 530, ¶5.

¶46 As a result, given that "[t]he purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth," the facts and circumstances here demonstrate that Sergeant Brown executed this affidavit "in a form calculated to awaken [Sergeant Brown's] conscience and impress [his] mind with [his] duty to [tell the truth]." Tye, 248 Wis. 2d 530, ¶19; Wis. Stat. § 906.03(1). This substance must be elevated over Moeser's complaints regarding form.

## IV. CONCLUSION

¶47 Moeser challenges the warrant which compelled him to submit to a blood draw. He argues that the warrant is constitutionally defective because the affiant was not placed under oath or affirmation when he signed the affidavit which accompanied the warrant application. According to Moeser, this omission failed to satisfy the requirement under the Fourth Amendment to the United States Constitution and Article I,

27

Section 11 of the Wisconsin Constitution that warrant applications be "supported by oath or affirmation." As a result, he argues that the circuit court erroneously denied his motion to suppress evidence and that the court of appeals erred in affirming that decision.

¶48 We conclude that the affidavit fulfilled the oath or affirmation requirement under the United States and Wisconsin constitutions because "[t]he purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth," and here the officer was impressed with that obligation. Tye, 248 Wis. 2d 530, ¶19; accord U.S. const. amend. IV; Wis. Const. art. I, § 11. In other words, the constitutional guarantee is satisfied because the facts and circumstances demonstrate that Sergeant Brown executed this affidavit "in a form calculated to awaken [Sergeant Brown's] conscience and impress [his] mind with [his] duty to [tell the truth]." Wis. Stat. § 906.03(1); accord Tye, 248 Wis. 2d 530, ¶19. The United States and Wisconsin constitutions do not require that any specific language or procedure be employed in the administration of an oath or affirmation. Instead, constitutional requirements, relevant case law, and the Wisconsin Statutes all indicate that the oath or affirmation requirement is an issue of substance, not form. Here, the facts sufficiently demonstrate that the constitutional right to be free from abusive governmental searches is satisfied. Therefore, the circuit court did not err in denying

28

Moeser's motion to suppress, and the court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

¶49 BRIAN HAGEDORN, J. *(concurring).* The Fourth Amendment requires that for a warrant to issue, it must be "supported by Oath or affirmation." U.S. Const. amend. IV. The majority opinion explains that neither the amendment's text nor its original understanding mandate that an oath or affirmation follow a particular form. Rather, the historical record suggests that the Fourth Amendment's oath or affirmation requirement is satisfied when an affiant: (1) knowingly and intentionally makes a statement; (2) affirms, swears, or declares that the information in the statement is true; and (3) does so under circumstances that impress upon the affiant the obligation to tell the truth.[1]

¶50 In this case, Sergeant Brown made a statement——the affidavit——in which he affirmed he had "personal knowledge that the contents of this affidavit are true . . . ." And by signing the statement before a notary with knowledge it would be presented to a magistrate——implicating the potential consequences of swearing falsely——Sergeant Brown acted under circumstances that impressed upon him the solemn obligation to tell the truth. This was enough to pass constitutional muster—— but not by much.

---

[1] See State v. Gutierrez-Perez, 337 P.3d 205, ¶19 (Utah 2014); see also United States v. Turner, 558 F.2d 46, 50 (2d Cir. 1977) (defining an oath or affirmation as a "formal assertion of, or attestation to, the truth of what has been, or is to be, said."); Affirmation, Giles Jacob, A New Law Dictionary (J. Morgan ed., 10th ed. 1782) (defining an affirmation as a "[s]olemn affirmation that what they [s]ay is true").

1

¶51 Although I disagree with its ultimate conclusion, the dissent offers strong counterarguments that call the sufficiency of the oath into question. In particular, the affidavit could be read to suggest a separate oath had already taken place, when the record is clear that it did not. I do not view this sloppiness as fatal for the reasons already described, but law enforcement should ensure the procedures employed to obtain warrants are clear and consistent. While the oath requirement is not a high bar, it is a constitutional prerequisite to obtaining a warrant. Giving careful attention to this requirement ensures searches are conducted in a manner that respect constitutional rights and do not risk undermining otherwise lawful efforts to collect evidence. Accordingly, I concur with and join the majority opinion.

¶52 I am authorized to state that Justice JILL J. KAROFSKY joins this concurrence.

¶53 ANN WALSH BRADLEY, J. *(dissenting).* The oath or affirmation requirement is not simply a matter of good practice. It is a constitutional imperative and an essential check on governmental power.

¶54 The majority states that the purpose of the oath or affirmation requirement is to "impress upon the swearing individual an appropriate sense of obligation to tell the truth." Majority op., ¶3 (citing State v. Tye, 2001 WI 124, ¶19, 248 Wis. 2d 530, 636 N.W.2d 473). Yet in this case, it is undisputed that the first sentence of Sergeant Brown's affidavit was not true. It says Sergeant Brown was "first duly sworn on oath." He wasn't.

¶55 The majority forgives this untruth, concluding that, despite the first sentence of the affidavit being false, somehow Sergeant Brown's conscience was "awakened" and his mind was "impressed" with the duty to tell the truth. Id. In essence, "good enough under the circumstances," says the majority.

¶56 But the question is not whether it is "good enough under the circumstances." Rather, the threshold question is: what is required under the warrant clause of both the United States and Wisconsin constitutions?

¶57 Justice Scalia, although in a different context, writing on behalf of the Court in Crawford v. Washington, faced a similar dilemma of dueling methods sufficient to establish reliability of testimony. He "readily concede[d]" that admitting reliable out-of-court testimony might be a good enough

1

way to find the truth.  Crawford v. Washington, 541 U.S. 36, 67 (2004).  However, he observed that the Sixth Amendment of the United States Constitution required a specific mechanism for determining the truth:  confrontation.  While acknowledging that confrontation is not the only way for getting at the truth, he determined that it was the one and only way the Founders chose. Id. ("The Constitution prescribes a procedure for determining the reliability of testimony in criminal trials, and we . . . lack authority to replace it with one of our own devising.").

¶58  So it is here.  The swearing of an oath or making an affirmation before a judicial officer may not be the only mechanism that is sufficiently reliable to support the requisite probable cause for the issuance of a search warrant.  It is, however, the mechanism that the Founders chose.

¶59  The writings of a founding father and subsequent United States Supreme Court Chief Justice, John Marshall, teach that the oath is a "solemn requirement."  Laurent Sacharoff, The Broken Fourth Amendment Oath, 74 Stan. L. Rev. 603, 679 (2022) (citing United States v. Burr, 25 F. Cas. 27, 28-29 (C.C.D. Va. 1807)).  Yet, the majority attempts to replace this "solemn requirement" with a malleable mechanism of its own devising. Rather than focusing on the meaning of the words of the warrant clause, it instead examines the purpose of the clause and the purported intent of the affiant to determine that there was sufficient compliance with its purpose here.

2

¶60 In my view, the majority errs when it eschews the constitutional imperative and instead determines that the "constitutional guarantee is satisfied" upon an examination of Sergeant Brown's subjective intent. See majority op., ¶3. The majority arrives at this conclusion via a flawed framework and focus.

¶61 To the contrary, I determine that the constitutional oath or affirmation requirement mandates more than an examination of the affiant's intent. It commands that an oath or affirmation actually take place, whether in writing or orally, and that it is done before a judicial officer in some fashion.[1] Because, as the majority correctly acknowledges, it is "undisputed that he made no such oath or affirmation before the judicial officer," id., ¶8, Sergeant Brown's affidavit does not meet the constitutional oath or affirmation requirement. As a consequence, the warrant is invalid and the blood draw evidence must be suppressed.

¶62 Accordingly, I respectfully dissent.

---

[1] I recognize that pursuant to Wis. Stat. § 968.12(3), "[a] search warrant may be based upon sworn oral testimony communicated to the judge by telephone, radio or other means of electronic communication," and I do not mean to cast aspersions on this method or suggest that it is constitutionally suspect. A real-time interaction between an affiant and a judicial officer by electronic means conducted pursuant to the statutory procedures is the functional equivalent of "before a judicial officer." Further, for purposes of "administering an oath or affirmation," a notary, although not a judge, is a "judicial officer." See Wis. Stat. § 140.01(7).

3

I

¶63 In the early morning hours of October 14, 2017, Sergeant Steven Brown stopped Jeffrey Moeser for suspected operating while intoxicated (OWI). Majority op., ¶4. After conducting field sobriety tests, as well as a preliminary breath test, Sergeant Brown transported Moeser to the hospital for a blood draw. Id.

¶64 At the hospital, Moeser refused to consent to the blood draw.[2] Id., ¶5. As a consequence, Sergeant Brown sought a search warrant. Id. To support his warrant application, Sergeant Brown completed a fill-in-the-blank form entitled, "Affidavit."

¶65 Sergeant Brown filled in his name in the blank space appearing before the pre-printed text, that stated, "being first duly sworn on oath, deposes and says." Id., ¶6. The affidavit further set forth that Sergeant Brown "ha[s] personal knowledge that the contents of this affidavit are true and that any observations or conclusions of fellow officers referenced in this affidavit are truthful and reliable." Id. He signed and dated the affidavit in the presence of his colleague, Lieutenant

---

[2] As is his constitutional right. State v. Prado, 2021 WI 64, ¶47, 397 Wis. 2d 719, 960 N.W.2d 869 (explaining that "a person has a constitutional right to refuse a search absent a warrant or an applicable exception to the warrant requirement").

Jacob Wills, a notary public. The notary's jurat[3] includes the phrase, "Subscribed and sworn to before me."

¶66 However, it is undisputed that Sergeant Brown made no oral oath or affirmation before signing the affidavit, and he made no oath or affirmation before any judicial officer. Id., ¶8. Despite this shortcoming, a judicial officer approved the warrant application and Moeser's blood was drawn. Id., ¶¶6-7.

¶67 Moeser later moved to suppress the blood draw evidence, arguing that the warrant did not satisfy the constitutional oath or affirmation requirement. Id., ¶8. The circuit court denied the motion, indicating that "Sergeant Brown did realize that he was swearing to the truth of what he indicated in his affidavit."

¶68 Subsequently, Moeser appealed, and the court of appeals affirmed the circuit court's decision over Judge Kloppenburg's dissent. State v. Moeser, No. 2019AP2184-CR, unpublished slip op. (Wis. Ct. App. June 24, 2021). The court of appeals concluded that "the affidavit satisfied the requirement that search warrants be supported by oath or affirmation." Id., ¶1.

¶69 Judge Kloppenburg dissented. Observing that "it is undisputed that Sergeant Brown did not swear to the truthfulness of the statements in the affidavit before either the notary or

---

[3] "'Jurat' is the name given to a notary's written certificate, which should appear after the signature of a person who has given an oath, or has made a sworn statement." Estate of Hopgood ex rel. Turner v. Boyd, 2013 WI 1, ¶4 n.4, 345 Wis. 2d 65, 825 N.W.2d 273.

the court commissioner" and that relevant statutes and case law "plainly require that the truth of an affidavit supporting a warrant must be sworn to before either a notary or a judge," Judge Kloppenburg determined that "the warrant is void." Id., ¶42 (Kloppenburg, J., dissenting).

¶70 The majority now affirms the court of appeals. It reasons "that the affidavit fulfilled the oath or affirmation requirement under the United States and Wisconsin constitutions because '[t]he purpose of an oath or affirmation is to impress upon the swearing individual an appropriate sense of obligation to tell the truth,' and here the officer was impressed with that obligation." Majority op., ¶3. In the majority's view, "the constitutional guarantee is satisfied because the facts and circumstances demonstrate that Sergeant Brown executed this affidavit 'in a form calculated to awaken [Sergeant Brown's] conscience and impress [his] mind with [his] duty to [tell the truth]." Id. The majority continues: "The United States and Wisconsin constitutions do not require that any specific language or procedure be employed in the administration of an oath or affirmation. Instead, constitutional requirements, relevant case law, and Wisconsin Statutes all indicate that the oath or affirmation requirement is an issue of substance, not form." Id.

II

¶71 Although there is disagreement in constitutional analyses about how much weight should be given to the original meaning of the constitutional text, there appears a general

6

agreement that, no matter the approach, it deserves some weight and matters at least to some degree. See Thomas Y. Davies, Recovering the Original Fourth Amendment, 98 Mich. L. Rev. 547, 742-45 (1999). Accordingly, I begin by focusing my analysis on three primary sources in determining the meaning of the constitutional oath or affirmation provision: the plain language of the text, the constitutional debates and practices of the time, and the earliest interpretations and applications of the provision.[4]

¶72 I do not endeavor to provide an exegesis discussing these sources. Rather, the discussion below provides an abbreviated review sufficient to support the conclusion that Sergeant Brown's affidavit does not meet the constitutional imperative that an oath or affirmation actually take place. For additional support, I also examine relevant modern case law and statutes.

A

¶73 The text of the Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." This

---

[4] Although I recognize that a historical inquiry is established in our case law, see, e.g., Appling v. Walker, 2014 WI 96, ¶7, 358 Wis. 2d 132, 853 N.W.2d 888; Dairyland Greyhound Park, Inc. v. Doyle, 2006 WI 107, ¶19, 295 Wis. 2d 1, 719 N.W.2d 408, I nevertheless am wary of a legal analysis that puts a court in the position of amateur historian. Such a framework is ripe for cherry-picking historical evidence that supports a favored conclusion. See State v. C.G., 2022 WI 60, ¶111, 403 Wis. 2d 229, 976 N.W.2d 318 (Ann Walsh Bradley, J., dissenting) (quoting Ford v. Wainwright, 477 U.S. 399, 406 (1986)); see generally Erwin Chemerinsky, Worse Than Nothing (2022).

7

requirement is echoed by the Wisconsin constitution. Wis. Const. art. I, § 11.[5]

¶74 In an attempt to buttress its result, the majority likewise looks to the text of the constitutional provision, and specifically to definitions of "oath" from the founding era. See majority op., ¶19. But in doing so, it often cites authority that supports the conclusion of this dissent.

¶75 For example, the majority cites a 1782 dictionary defining "oath" as "an affirmation or denial of any thing, before one or more persons who have authority to administer the same, for the discovery and advancement of truth and right, calling God to witness, that the testimony is true." Id. (citing Oath, Giles Jacob, A New Law Dictionary (J. Morgan ed., 10th ed. 1782)). According to this definition, apparently espoused by the majority, an oath must be accomplished before one who has authority to "administer" the oath. "Administering" an oath thus presupposes that the affiant has undertaken some sort of action before another indicating recognition of the need to tell the truth. Swearing an oath invokes the deity to be a witness to the oath and risks punishment from the divine if the truth is not told.[6]

---

[5] Aside from minor differences in punctuation and capitalization, the Fourth Amendment and Article I, Section 11 are identical.

[6] See Oath, Black's Law Dictionary (11th ed. 2019) (defining "oath" as "[a] solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true or that one will be bound to a promise"). One who falsely swears an oath also may face legal consequences, such as criminal charges for perjury or false swearing. See Wis. Stat. §§ 946.31, 946.32.

¶76 Other founding era dictionaries confirm the active nature of an oath, i.e., it is something that must be done before another. For example, a 1775 dictionary defines an "oath," as relevant here, as "[a] solemn attestation, the form of attestation before a magistrate, an appeal to the Divine Being by the mention of something sacred . . . ." Oath, John Ash, The New and Complete Dictionary of the English Language (1775). This definition confirms that there must actually be an "attestation," which must be accomplished "before a magistrate."

¶77 The constitutional text thus weighs against the majority's conclusion. As will be more fully set forth below, Sergeant Brown did nothing "before" anyone that could be called a "solemn attestation," or that risked punishment from a deity if the truth is not told. In essence, he did nothing constituting an "oath" as envisioned by the constitutional mandate, "supported by oath."

B

¶78 To further examine the meaning of the text, I turn next to the constitutional debates at the time of the founding. The warrant clause of the Fourth Amendment came about as a response to Britain's use of Writs of Assistance "in the American colonies to search wherever government officials chose with nearly absolute and unlimited discretion." Tye, 248 Wis. 2d 530, ¶8; see also State v. Williams, 2012 WI 59, ¶17, 341 Wis. 2d 191, 814 N.W.2d 460. These writs were perceived by the colonists as fundamental violations of the right to be undisturbed in their person and property, and accordingly each

9

of the state constitutions following independence guaranteed the right to be free from unreasonable searches and seizures. Tye, 248 Wis. 2d 530, ¶9.

¶79 In the process of crafting the United States Constitution, James Madison served as the drafter for the federal rights amendments. His original proposed language for the Fourth Amendment included an oath or affirmation requirement:

> The rights of the people to be secured in their persons, their houses, their papers, and their other property from all unreasonable searches and seizures, shall not be violated by warrants issued without probable cause, supported by oath or affirmation, or not particularly describing the places to be searched, or the persons or things to be seized.

Davies, supra ¶71, at 697 (citing James Madison, Speech to the House of Representatives (June 8, 1789), in 12 The Papers of James Madison 197, 201 (Robert A. Rutland et al. eds., 1977)).

¶80 The final language of the amendment likewise contained the oath or affirmation requirement, which was not altered by a subsequent committee report, the House, the Senate, or the state legislatures, where it was ratified "without any apparent controversy." Id. at 723. This consistency of the oath or affirmation language reflects the central nature of this requirement in the Fourth Amendment's text.

¶81 A similar series of events played out in Wisconsin. Even prior to statehood, the territorial legislature enacted a requirement mandating an oath in an application for a search warrant. Tye, 248 Wis. 2d 530, ¶10. And when Wisconsin attained statehood, it also included in its constitution an

10

amendment protecting the people against unreasonable searches and seizures. Like the Fourth Amendment, the initial proposed language of Article I, Section 11 of the Wisconsin constitution included language dictating that warrants must be "supported by oath or affirmation." Milo M. Quaife, ed., The Attainment of Statehood 228 (1928). This proposed language set forth:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrants to search any place or seize any person or thing shall issue without describing, as near as may be, nor without probable cause, supported by oath or affirmation.

Id. Again, this language remained consistent through the constitutional debate. Indeed, "[i]t is evident from the debates that the adoption of Article I, Section 11 was relatively uncontroversial . . . ." Williams, 341 Wis. 2d 191, ¶25. Accordingly, Article I, Section 11 was enshrined in our state constitution. Tye, 248 Wis. 2d 530, ¶10. The debates thus reflect both the central importance of the oath or affirmation requirement and the consensus surrounding its necessity.

¶82 An examination of the practices at the time following adoption of these constitutional provisions further confirms that an oath or affirmation is an "act" done before a judicial officer.

¶83 During our nation's founding era, justices of the peace were central to the warrant-issuing process. Indeed, they issued the majority of warrants. Sacharoff, supra ¶59, at 623 (citing 2 Matthew Hale, Historia Placitorum Coronae: The History

11

Of The Pleas Of The Crown 107 (W.A. Stokes & E. Ingersoll eds., Philadelphia, Robert H. Small 1st Am. ed. 1847)). These justices of the peace relied upon published justice of the peace manuals, which "in turn, greatly influenced the Framers and ratifiers." Id. at 624.

¶84 The manuals for justices of the peace often contained forms for complaints to obtain a warrant, and such forms included standard language that a complainant "swears" to the information therein. Id. at 630-31. "[This] warrant process occurred before a magistrate who was required to carefully examine and assess the witness to ensure the truth of the allegations." Id. at 607.

¶85 Such forms setting forth standard language were also in use in Wisconsin. See Edwin E. Bryant, A Treatise on the Civil and Criminal Jurisdiction of Justices of the Peace, and the Powers and Duties of Constables in Executing Process in the State of Wisconsin 940 (1884). These forms likewise set forth a jurat: "Subscribed and sworn to before me, this ___ day of ____, A.D. 18__, _____ _____, Justice of the Peace." Id.[7] And

---

[7] In full, an example form complaint for a search warrant in Wisconsin's Justice of the Peace manual sets forth:

State of Wisconsin

_____ County

C.D., being first duly sworn, complains on oath before me and says that one harness of the value of thirty dollars, and one saddle of the value of ten dollars, of the goods and chattels of the said C.D. were, on the ____ day of ____, A.D. 18__, feloniously taken, stolen and carried away from his premises and possession, at said county, and that the said

12

even today, example forms consistently contain a statement in the jurat that the information in the affidavit was "Subscribed and sworn to before me." Indeed, the affidavit in this case was affixed with a similar jurat.

¶86 Thus, from the early days of the republic, an affidavit in support of a search warrant necessarily was accompanied by an act of swearing before a judicial officer, supporting this dissent's conclusion that an affiant must complete some sort of act to have properly sworn an oath or made an affirmation. Stated differently, the practices at the time of the founding make clear that an oath must be taken, and it must be done before a judicial officer.

C

¶87 An examination of the earliest interpretations and applications of the constitutional oath or affirmation requirement also informs our inquiry. Early legislative enactments reinforced the need for an oath in an application for

---

complainant verily believes that the said stolen goods and chattels are concealed in the dwelling house of one A.B. (or, particularly describe the place to be searched), in the _____ of _____, in said county; and that the following are the reasons for and grounds of such belief: (Here set forth reasons, etc., to satisfy the magistrate that there is cause for such belief.)

Subscribed and sworn to before me, this ___ day of ____, A.D. 18__, _____ _____, Justice of the Peace.

Edwin E. Bryant, A Treatise on the Civil and Criminal Jurisdiction of Justices of the Peace, and the Powers and Duties of Constables in Executing Process in the State of Wisconsin 940 (1884).

13

certain search warrants. <u>Tye</u>, 248 Wis. 2d 530, ¶11. Indeed, the Wisconsin legislature passed a statute indicating just this in 1848, the same year Wisconsin attained statehood.[8] <u>Id.</u> The text of this original statutory provision has been amended numerous times, but it still today refers to a "<u>sworn</u> complaint" or "<u>sworn</u> oral testimony." <u>Id.</u>; Wis. Stat. § 968.12 (emphasis added).[9] Additionally, the modern statute indicates that the complaint must be sworn to "before a notarial officer authorized under ch. 140 to take acknowledgments or before a judge" or may be taken telephonically in compliance with certain statutory procedures. Wis. Stat. § 968.12(2) & (3).

---

[8] <u>See</u> <u>State v. Tye</u>, 2001 WI 124, ¶11 n.10, 248 Wis. 2d 530, 636 N.W.2d 473; Wis. Stat. § 2, ch. 142 (1849) ("Any such magistrate when satisfied that there is reasonable cause, may also, upon like complaint made on oath, issue search warrants . . . .").

[9] In relevant part, Wis. Stat. § 968.12 provides:

(2) Warrant upon affidavit. A search warrant may be based upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter or under sub. (3)(d), showing probable cause therefor. The complaint, affidavit or testimony may be upon information and belief. The person requesting the warrant may swear to the complaint or affidavit before a notarial officer authorized under ch. 140 to take acknowledgments or before a judge, or a judge may place a person under oath via telephone, radio, or other means of electronic communication, without the requirement of face-to-face contact, to swear to the complaint or affidavit. The judge shall indicate on the search warrant that the person so swore to the complaint or affidavit.

(3) Warrant upon oral testimony. (a) General rule. A search warrant may be based upon sworn oral testimony communicated to the judge by telephone, radio or other means of electronic communication, under the procedure prescribed in this subsection.

14

¶88 We find an additional example of the early application of the oath or affirmation requirement by one of the preeminent jurists in our country's history during the course of his participation in a notorious trial. As part of the trial of Aaron Burr in 1807, Chief Justice John Marshall was asked to rule on the admissibility of an affidavit. For an oath to be a "legal oath," Chief Justice Marshall commented that it must be "taken by a 'complete magistrate' who is 'qualified.'" Sacharoff, supra ¶59, at 680 (citing Burr, 25 F. Cas. at 28-29). His ruling demonstrates that an oath is "a solemn requirement that could not be relaxed." Id. at 679.

¶89 The upshot of all of this is that an oath is an "act" that must take place. The groundwork for such a premise is laid by dictionaries from the founding era and built upon through the constitutional debates and practices of the time, as well as the first interpretations and applications after enactment. The affiant must do something, and that something is to actually take an oath.

D

¶90 I turn next to examine applications of an oath or affirmation requirement in Wisconsin case law. This case law again drives home the point that an "oath" is an act that must take place.

¶91 In Kellner v. Christian, 197 Wis. 2d 183, 191, 539 N.W.2d 685 (1995), we concluded that "in order for a notice to be properly 'sworn to' under Wis. Stat. § 893.82(5), a claimant must make an oath or affirmation as to the truthfulness of the

15

contents of the notice." In doing so, we described the oath or affirmation requirement as mandating "in some form an unequivocal and present act by which the affiant consciously takes upon himself the obligation of an oath." Id. at 192 (emphasis added).

¶92 We have also distinguished an oath or affirmation from an "acknowledgement" in that "oaths and affirmations require a person to swear or affirm the truth of a statement." Estate of Hopgood ex rel. Turner v. Boyd, 2013 WI 1, ¶30, 345 Wis. 2d 65, 825 N.W.2d 273.[10] "They are solemn, formal, and signify an obligation to speak the truth." Id. We have also described an oath or affirmation as something that "must be administered." Id., ¶31; see also State v. Johnston, 133 Wis. 2d 261, 267, 394 N.W.2d 915 (Ct. App. 1986) (concluding that the defendant was under oath after the oath was administered by the clerk of court). Use of the word "administer" strengthens the premise

---

[10] Admittedly, Hopgood, like Kellner, addressed the requirement that a notice of claim pursuant to Wis. Stat. § 893.82(5) be "sworn to," and not a search warrant. However, this is distinction without a difference. Why should it mean one thing to "swear to" a statement's truth in one context and something else in another?

that an oath is an "act" taken by the affiant before and in interaction with another.[11]

### III

¶93 With the above discussion as a guide, I turn finally to apply the teachings of the constitutional text, constitutional debates and practices of the time, earliest legislative enactments, and case law to the facts at hand.

¶94 As the historical evidence demonstrates, and as the majority correctly observes, an oath or affirmation has long been an "essential prerequisite to the issuance of a valid search warrant." Majority op., ¶17; Tye, 248 Wis. 2d 530, ¶13; State v. Baltes, 183 Wis. 545, 552, 198 N.W. 282 (1924). For a constitutional "essential prerequisite," the majority treats the oath or affirmation requirement rather loosely. There is no dispute here that Sergeant Brown did not, either orally or in writing, swear or affirm that he would tell the truth at any point in the process of filling out or signing his affidavit. The law does not support the majority's "look the other way" approach.

¶95 Sergeant Brown's affidavit, by itself, was insufficient to fulfill the constitutional oath or affirmation

---

[11] The majority quotes from a commonly-cited treatise on criminal procedure to support its conclusion. Majority op., ¶32 (quoting 2 Wayne R. LaFave, et al., Criminal Procedure § 3.4(c) (4th ed. 2021) (citations omitted)). However, as the majority further acknowledges, LaFave also states that "[n]o particular ceremony is necessary to constitute the act of swearing," further supporting this dissent's conclusion that an oath requires an act. See LaFave, et al., supra, § 3.4(c) (emphasis added). Thus, this treatise still supports this dissent's premise that "something must be done."

17

requirement. I agree with the majority that an oath need not be oral. See majority op., ¶19 (indicating that "it was recognized during the Founding that an 'oath' could be written rather than spoken"). However, nothing in the affidavit constitutes a written oath and the parties agree that no oral oath was ever "taken" before a judicial officer. If, instead of "being first duly sworn," the affidavit began with "I swear or affirm that the contents of this affidavit are true," we would likely not have this case before us. And if Sergeant Brown had made an oral oath before the notary swearing or affirming the truth of the affidavit's contents, we likely would be on solid constitutional ground.

¶96 However, neither of these things happened. The affidavit instead falsely asserts that Sergeant Brown was "first duly sworn." It is undisputed that he was not. This court has previously held that "the total absence of any statement under oath to support a search warrant violates the explicit oath or affirmation requirement." Tye, 248 Wis. 2d 530, ¶3. Such is the case here.

¶97 I further agree with the majority that an oath is a matter of substance, not form. See majority op., ¶36. But this does not mean that law enforcement can dispense with the act of an oath altogether and still call it an oath. There may not be "magic words" required, but there still must be an oath. Here, Sergeant Brown's "oath" was deficient as a matter of substance because there was no actual oath taken by the affiant.

18

¶98 Indeed, there was no "oath" "taken" "before" anyone. There was no attestation, much less an attestation before a magistrate. Because Sergeant Brown did not commit any act before any other person that would indicate he was under oath at any point in the process of drafting, signing, or notarizing the affidavit, I conclude that he was not under oath for purposes of the Fourth Amendment and Article I, Section 11 of the Wisconsin constitution.

¶99 The oath or affirmation requirement is not a technicality or meaningless hoop through which law enforcement must jump. See Kellner, 197 Wis. 2d at 192 (explaining that "the requirement of an oath is not a mere technicality"); Tye, 248 Wis. 2d 530, ¶14 (agreeing with the State's acknowledgement that the "failure to swear to the information upon which a warrant is obtained cannot be dismissed as a mere failure to comply with a technicality"). It is instead a constitutional imperative. I would hold law enforcement to the constitutional standard, thereby "preserv[ing] the integrity of the search warrant process," Tye, 248 Wis. 2d 530, ¶19, and upholding the vitality of the oath or affirmation requirement.

¶100 For the foregoing reasons, I respectfully dissent.

¶101 I am authorized to state that Justice REBECCA FRANK DALLET joins this dissent.